## La Sociedad Protectora de Niños, Recurrente, *v.* El Registrador de San Juan, Recurrido.

Recurso gubernativo contra nota del Registrador de la Propiedad de San Juan, Sección Primera, denegatoria de la inscripción de edificaciones.

No. 469.—Resuelto en julio 28, 1921.

Inscripción de Bienes Inmuebles Adquiridos Durante el Matrimonio como Privativos de uno de los Cónyuges—Defecto Subsanable.—Es inscribible en el registro la venta de un solar con casa y garage en él edificados, hecha por una mujer divorciada, la cual hubo dicho solar en estado de soltería y edificó casa y garage siendo casada, con recursos privados de ella, según propia manifestación corroborada por su esposo, sin que la falta de prueba mayor aportada al registro sobre el particular impida la inscripción de las edificaciones, pues tal falta es subsanable según repetida jurisprudencia de esta Corte Suprema.

Id.—Id.—Calificación Anterior Hecha en el Registro de un Defecto como Subsanable.—Habiendo sido inscrito anteriormente en el registro un contrato de arrendamiento del mismo solar expresado con casa y garage, celebrado por la misma mujer en estado de matrimonio, con el defecto subsanable de falta de prueba de que casa y garage fueran bienes privativos suyos, a esa misma calificación debió atenerse el registrador sin poder ir contra ella al denegar como denegó la inscripción de la venta de la casa y garage.

Inscripción de un Bien Inmueble a Favor del Adquirente Cuando Aquél no

Aparece Inscrito en el Registro a Favor del Causante.—Adquirido por título de compraventa un solar con casa en él edificada e inscrita en el registro la adquisición del solar sin hacer mención de la casa, la venta que de dicho solar y casa se haga no puede inscribirse en el registro respecto de la casa por no aparecer ésta inscrita a favor del causante.

Los hechos están expresados en la opinión.

Abogados de la recurrente: *Sres. Soto Gras & Siaca.*

El registrador recurrido compareció por escrito.

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

María Palomo Mellado, propietaria ya, en septiembre 18, 1918, poco antes de su matrimonio, adquirió y vino a ser la dueña con título inscrito de una casa en estado de ruinas y su solar. En una escritura de arrendamiento otorgada en abril 15, 1919, que fué debidamente inscrita en 30 de dicho mes se describen una casa y garage valorados ambos en $1,500 como situados en el lugar anteriormente ocupado por la antigua casa a que se ha hecho referencia y se dice que fueron adquiridos por la arrendadora y dueña referida del solar en cuestión, que ahora es una señora casada, mediante reedificación y construcción con peculio propio y de sus fondos privativos, o sea, parte del dinero aportado por ella en efectivo al matrimonio, como aparece de la escritura de capitulaciones matrimoniales. El deseo y propósito de la arrendadora y de su esposo de que la casa y garage constaran inscritos como bienes privativos de ella, aparece claramente de la inscripción que en parte es como sigue:

"Solar con casa sitos en el barrio de Hato Rey, término municipal de Río Piedras. La casa que es terrera, de madera y techada de zinc, contiene anexo un garage con departamentos para dos carros; es de reciente construcción y está edificada en el mismo sitio en que en el solar que se describe enclavaba una casa, también terrera, de madera, techada de zinc, y en estado de ruinas, la cual fué destruída."

\*      \*      \*      \*      \*      \*      \*

"Doña María Palomo Mellado, mayor de edad, soltera, propietaria y vecina de Río Piedras, adquirió el terreno de esta finca, siendo soltera, por compra a don Julián Silva Hubadrón según la inscripción

décima, expresándose asimismo en el documento que la casa que actualmente enclava en este solar y el garage anexo, los hubo doña María Palomo y Mellado, ya casada con don Julio Rodríguez y Bonilla, a título de reedificación y construcción, a expensas propias y con peculio privativo de ella, procedente del dinero efectivo que aportó a su matrimonio con el señor Rodríguez según consta de las capitulaciones matrimoniales de dichos cónyuges, queriendo y consintiendo la señora Palomo en que tales edificaciones consistentes en la casa y garage dichos se hagan constar en el registro de la propiedad por los títulos expresados de reedificación y accesión a expensas y con peculio privativo de ella, haciendo constar, al efecto, que la casa y garage tienen un valor de mil quinientos dollars.   Y por el título que motiva la presente doña María Palomo y Mellado, mayor de edad, propietaria y vecina de Río Piedras da en arrendamiento la finca de este número, como compuesta del solar con sus edificaciones descritas anteriormente, con otra finca más, que es la que se inscribe donde indica la nota al margen, a Mister Frederick B. Noonan, mayor de edad, divorciado, arquitecto y vecino de esta ciudad, por el término de cinco años que contados desde la fecha de la escritura vencerán por tanto el día catorce de abril de mil novecientos veinticuatro. * * *

"Don Julio Rodríguez y Bonilla, mayor de edad, propietario y vecino de Río Piedras, ratifica las anteriores manifestaciones que hacen referencia a la reedificación y construcción de la casa y garage, que podrá vender, enajenar, gravar, hipotecar, ceder, permutar, arrendar y ejecutar sobre ellos todos los demás actos de exclusivo y riguroso dominio, su esposa doña María Palomo, sin la intervención de Rodríguez, quien a mayor abundamiento en lo que a tales edificaciones respecta consiente en este arrendamiento y en lo que por el mismo ha convenido y deja ejecutado su citada esposa doña María Palomo.   En su virtud, inscribo a favor de Frederick B. Noonan su derecho de arrendamiento de la finca de este número, con el defecto subsanable de no acreditarse la procedencia del dinero empleado en la reedificación de la casa y construcción del garage."

Admitiendo en pro del argumento la existencia del defecto subsanable así indicado, la inscripción de este arrendamiento como se hizo era correcta y hubiera sido confirmada por esta corte en apelación como también lo hubiera sido una escritura absoluta de traspaso otorgada por la esposa sin la comparecencia, ratificación o expreso consentimiento del marido.

*Figueroa* v. *Registrador de Arecibo,* 24 D. P. R. 851; *Julio Godreau Co.* v. *Registrador de Guayama,* 23 D. P. R. 65, y *Rodríguez* v. *Registrador,* 26 D. P. R. 73. Y que los subsiguientes traspasos de la propiedad así vendida hubieran podido ser susceptibles de inscripción con sujeción únicamente a la mención de tal defecto subsanable, es cuestión que apenas puede ser objeto de argumentación.

Si como parece ser el hecho, con excepción de la mención del defecto subsanable, el registrador tuvo ante sí las capitulaciones matrimoniales, y si según se expresa en el contrato de arrendamiento la esposa aportó al matrimonio en efectivo una suma igual o mayor al valor de la casa y garage como aparece de tales capitulaciones matrimoniales, entonces no había defecto subsanable y de haberse interpuesto recurso gubernativo la calificación en cuanto a esto hubiera sido revocada. El registrador no expresa que las capitulaciones matrimoniales no fueron presentadas. Pero sí lo que la calificación significa es que el contrato de matrimonio no fué transcrito enteramente en el documento notarial presentado para inscripción, ni en ninguna otra forma, entonces el registrador no quedaba obligado por la mera referencia en cuestión y la mención de tal omisión en presentar prueba documental del hecho como defecto subsanable era procedente de acuerdo con la doctrina del caso de *Cobreros et al.* v. *El Registrador de San Juan,* resuelto en 13 de junio último, (página 577) y casos citados. De todos modos, no era sino un defecto subsanable susceptible de ser corregido en cualquier momento presentándose las capitulaciones matrimoniales.

En abril, 1920, doña María ya divorciada, vendió la casa y solar arriba descritos en unión de otras fincas a la Sociedad Protectora de Niños. Esta escritura fué admitida para su inscripción en cuanto al solar, pero "denegada la inscripción en cuanto a los edificios, por lo que respecta a la casa y garage de la finca letra 'A' porque habiéndolos ad-

quirido la vendedora siendo casada con don Julio Rodríguez Bonilla, los enajenó ya divorciada sin acreditarse la liquidación de la sociedad conyugal ni la consiguiente adjudicación de los mismos a dicha vendedora; y por lo que respecta a la casa de once metros de frente por diez y siete de fondo de la finca letra 'B' por no haberse inscrito a favor de la vendedora la compra que de la misma casa manifiesta haber hecho.''

La Sociedad Protectora de Niños recurre de esta resolución.

Hasta aquí con el fin de evitar confusión hemos omitido todos los detalles en cuánto a la finca a que se refiere el registrador como letra "B" y por la misma razón la segunda cuestión envuelta puede pasarse por alto hasta que la primera haya sido resuelta.

En apoyo de esta primera proposición el registrador cita un número de casos en los cuales esta corte ha resuelto que en cuanto a terceros con derecho al beneficio de la presunción legal que establece el artículo 1322 del Código Civil, la mera declaración hecha por ambos esposos en un traspaso de propiedad inmueble a la esposa respecto al carácter privativo del dinero de la compra, no es bastante para destruir tal presunción. En ninguno de estos casos aparecía concluyentemente que la esposa tuviera propiedad privativa alguna de su exclusivo dominio a la fecha del matrimonio. En ninguno de ellos se hicieron las manifestaciones acerca del origen y naturaleza privativa del precio de compra dentro de un período menor de siete meses después del matrimonio. En ninguno de ellos se hizo referencia como prueba de la verdad de tales manifestaciones al contrato de capitulaciones matrimoniales. Tampoco en ellos se promovió cuestión alguna o estuvo necesariamente envuelto el efecto de tales manifestaciones como impedimento, *"estoppel"* o de otro modo en cuanto a las partes en el contrato y sus sucesores u otras personas que de buena fe confiaban en tales mani-

festaciones al negociar con los bienes. En realidad en el último de los casos referidos, *Sánchez* v. *Registrador,* 28 D. P. R. 669, la opinión niega expresamente todo propósito de resolver acerca del alcance o efectos de las manifestaciones contenidas en él y sometidas a la consideración de la corte fuera de la conclusión enumerada respecto a la subsistencia de la presunción relativa al carácter ganancial de la propiedad traspasada e inscrita con defecto subsanable a nombre de la esposa, no obstante la clara manifestación de los esposos y del padre de la esposa en cuanto al origen del precio de compra.

"En el sistema español al lado de los bienes gananciales está la propiedad privativa de cada uno de los esposos. Los bienes privativos y los gananciales son los complementos de uno y otro. Cada esposo puede tener bienes privativos; no privativos en el sentido de la Ley Común sino privativos en cuanto al fondo común de las ganancias obtenidas en el matrimonio. El marido administraba los de la esposa así como los suyos privativos y los frutos de toda la propiedad privativa iban al fondo común. La idea española de bienes privativos ha sufrido muchos cambios en los Estados Unidos. Primero vino un cambio radical cuando California separaba los frutos de la propiedad privativa del fondo común a la propiedad privativa; esta modificación fué adoptada en Arizona, Nevada y Washington. Con la separación de los frutos de la propiedad privativa del fondo común, vino también otro cambio, a saber: quitar al marido y dar a la mujer la administración de sus bienes privativos. En realidad la tendencia moderna de dejar libres los bienes privativos de la esposa de la facultad de administrarlos el marido y confiriendo más facultades a la mujer, ha establecido tal avance que ahora en Arizona, California, Nevada y Washington, la esposa tiene todas las facultades de una mujer soltera para contratar, administrar y vender sus bienes privativos sin el consentimiento o comparecencia del esposo.

"Tejas se ha adherido más estrictamente a la ley española en cuanto a la administración, frutos y rentas de la propiedad privativa de la esposa que ningún otro Estado; allí los frutos de la propiedad privativa ingresan al fondo común y el marido tiene la administración de la propiedad privativa de la esposa.

"Louisiana se ha separado de la regla de la ley española y per-

mite a la esposa que gobierne ella misma esa parte de sus bienes privativos que se califican como bienes parafernales y al hacerlo así, adquiere como parafernales las rentas, productos y beneficios. Su propiedad dotal permanece bajo la administración y control del marido y sus frutos y rentas pasan a la masa común. *McKay on Community Property*, página 39, sección 5.

"Respecto a la existencia de la presunción de que todos los bienes que están a nombre o en poder de cualquiera de los esposos después del matrimonio son gananciales (no hay discusión alguna); pero existe cierta aparente diferencia de opinión en cuanto a la fuerza de la presunción y al *quantum* de prueba necesaria para destruirla y probar una adquisición privativa. En la mayoría de los casos estas diferencias aparentes pueden harmonizarse teniendo en cuenta las circunstancias especiales de los casos en los cuales se emitieron las opiniones divergentes.

"La presunción tiene poca fuerza inmediatamente después de la celebración del matrimonio y especialmente antes de que las partes hayan pasado de sus nupcias a los asuntos ordinarios de la vida; pero adquiere fuerza a medida que nos apartamos de la fecha del matrimonio y después que transcurre tiempo de la adquisición de la propiedad; después de adquiridos los bienes y de haber sido cambiados o permutados los bienes privativos originales por otros y confundidos con las adquisiciones del fondo común, es difícil presentar prueba del dominio privativo; y el poder seguir la pista de los primitivos bienes privativos por medio de sus cambios y permutas a veces se convierte en cosa casi imposible; bajo tales circunstancias se dice a veces que la presunción es fuerte cuando lo que realmente quiere decirse es que la prueba en contrario es débil, dudosa y en la cual no puede dependerse, siendo por tanto insuficiente."

"La presunción no es tan fuerte respecto a *propiedad adquirida a nombre de la esposa;* adquirir propiedad a nombre de la esposa es cosa que está fuera del curso ordinario en la transacción de los negocios de la sociedad conyugal, y cuando se hace, tiende a indicar la propiedad privativa de ella y es ligera prueba tendente a mostrar que la propiedad es privativa de ella, pero no por sí suficiente; ahora bien, al decirse que la presunción en cuanto a las adquisiciones a nombre de ella no es tan fuerte, lo que se quiere significar es que el hecho de las adquisiciones a su nombre es cierta prueba de una adquisición privativa aunque no suficiente a menos que vaya acompañada por otra prueba; las circunstancias de la transacción suministran *alguna prueba,* aunque ligera, de que la propiedad es privativa, y la

fuerza de la presunción legal disminuye en proporción.  La presunción no es arbitraria sino razonable y se amolda a todas las variables circunstancias que acompañan la tenencia y adquisición de la propiedad y permite que se dé completo efecto a aquellas circunstancias.'' *Idem,* p. 324, art. 261.

''El razonamiento de las anteriores secciones conduce a la conclusión de que la prueba del dominio privativo razonablemente cierta en vista de las circunstancias es todo lo que la ley exige.  La prueba más allá de una duda razonable, como en casos criminales, no se requiere, y en verdad en la verdadera práctica, los grados de prueba poco significan.  La prueba produce efecto en criterios distintos con diferentes grados de fuerza, y lo que es una fuerte prueba para uno es prueba de grado inferior para otro.  La prueba de una certeza razonable significa aquella prueba que de tal modo convencería a una persona de condiciones generales de que él estaría conforme en proceder basado en ella en los asuntos de negocios de la vida.  Esto es todo lo que requieren las últimas bien consideradas opiniones.'' *Idem.* p. 325, sec. 262.

''Cuando el traspaso hecho a la esposa limita la propiedad traspasada a su uso privativo, o contiene cláusulas de donde aparece que la causa procedía de su propiedad privativa, y *consta del traspaso mismo* que el marido estuvo conforme en cuanto a la *forma* de dicho traspaso, entonces en opinión del autor, debe resolverse que la esposa adquiere una propiedad privativa, sujeta, sin embargo, a ser anulada por terceros: el derecho de la esposa a la propiedad privativa en tal caso no descansa en base más firme que no sea el consentimiento del esposo y si este consentimiento se presta con infracción de los derechos de otros, éstos no deben ser perjudicados.'' *Idem,* p. 178, sec. 92.

''En Louisiana las manifestaciones hechas en la escritura de venta por la que se traspasa propiedad a la esposa son obligatorias para el marido porque él es, de acuerdo con la ley, una parte necesaria en el traspaso; sin su consentimiento ella no puede comprar; en este Estado la fuerza de dichas manifestaciones como prueba descansa en el fundamento claro y racional de que dichas manifestaciones equivalen a admisiones contra su interés como principal y administrador de la sociedad conyugal; y de acuerdo con este razonamiento no constituyen ellas prueba contra terceros entre los cuales generalmente se enumeran los acreedores del marido y sus herederos forzosos en cuanto a su legítima.  Los casos en Louisiana robustecen el razonamiento de la anterior sección respecto a tales manifestaciones en las escrituras a favor de la esposa cuando el marido tiene la administra-

ción y control de su propiedad.   También muestran los límites precisos de la doctrina y la razón en que descansa la regla.

"Las manifestaciones son declaraciones o admisiones hechas por el esposo contra su interés y son por tanto prueba contra él, pero no concluyente, pues él puede probar que fueron incluídas por fraude o error.   En harmonía con este razonamiento las manifestaciones contenidas en el traspaso al esposo no son prueba en absoluto a su favor." *Idem,* p. 340, sec. 278.

Los artículos 173, 174 y 176 del Código Civil prescriben lo siguiente:

"Artículo 173.—El divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges.

"Artículo 174.—El cónyuge contra quien la sentencia de divorcio hubiese sido pronunciada perderá todas donaciones que la otra parte pueda haberle hecho durante el matrimonio o al contraerlo, y el inocente conservará todo lo que hubiese adquirido de la contraria.

"Artículo 176.—El divorcio no privará en ningún caso a los hijos nacidos en el matrimonio de ninguno de los derechos o ventajas que por la ley les están señalados o que les corresponden por razón del matrimonio de sus padres, pero tales derechos no podrán ser reclamados excepto de la manera y bajo las circunstancias en que su reclamación hubiese procedido si el divorcio no hubiese tenido lugar."

El artículo 1330 prescribe que "la sociedad de gananciales concluye al disolverse el matrimonio en los casos señalados en este código, o al ser declarado nulo."

Considerado el hecho, sin más, de que un divorcio ha sido decretado, la presunción, de haber alguna, aún en ausencia del artículo citado en último término, parece ser, no que la naturaleza de la sociedad de gananciales en manera alguna sea afectada por tal sentencia, sino que en cuanto a toda dicha propiedad el marido y la mujer, *ipso facto,* se convierten en y son condueños.

"Aunque en los Estados donde existe la institución de la sociedad de gananciales del marido y la mujer ordinariamente hay un precepto estatutorio para su división en relación con los procedimientos de

divorcio, la regla general es que cuando no se hace referencia en la sentencia de divorcio a los bienes gananciales, las partes quedan convertidas en cuanto a dicha propiedad en condueñas. *Godey* v. *Godey,* 39 Cal. 164; *Biggi* v. *Biggi,* 98 Cal. 35, 35 Am. St. Rep. 141, 32 Pac. 803; *Kirschner* v. *Dietrich;* 10 Cal. 502, 42 Pac. 1064; *Tabler* v. *Peverill,* (Cal. App.) 88 Pac. 994; *Kirkwood* v. *Domnau,* 80 Tex. 645, 26 Am. St. Rep. 770, 16 S. W. 438; *Soulhwestern Mfg. Co.* v. *Swan,* (Tex. Civ. App.) 43 S. W. 813; *Moor* v. *Moor,* 24 Tex. Civ. App. 150, 57 S. W. 992; *Williamson* v. *Gore,* (Tex. Civ. App.) 73 S. W. 563.''

''En el caso de *Whetstone* v. *Coffey,* 48 Tex. 269, se sostuvo que el estatuto que prescribía que 'la corte que pronuncia una sentencia de divorcio del vínculo matrimonial también dictará y ordenará la división de los bienes de las partes de tal manera que a ellos parezca justa y correcta, teniendo muy en cuenta los derechos de cada parte y los de sus hijos, de haber alguno; disponiéndose, sin embargo, que nada de lo aquí contenido será interpretado en el sentido de obligar a cualquiera de las partes a privarse del título a los bienes inmuebles o a los esclavos,' tenía el efecto de convertir la sentencia de divorcio en cosa juzgada en cuanto a los derechos de propiedad de la esposa, aunque el derecho a la propiedad no hubiese sido materia de discusión en el pleito de divorcio, de modo que excluya una subsiguiente acción por parte de la esposa por su parte en los bienes gananciales. La corte resolvió, sin embargo, que tal no era el efecto que había de darse al estatuto, diciendo: 'Este ciertamente garantiza a cualquiera de las partes el derecho a hacer aquellas alegaciones que informen a la corte de la naturaleza y extensión de los bienes que han de ser divididos, y puede facultar a la corte para que ordene que se haga, especialmente en beneficio de los hijos si algunos hubiere. Pero supongamos que las partes no lo piden y que la corte no ordene que se haga. ¿Pudo haber sido la intención de la Legislatura al decretar esta ley que el dejar de hacerlo produciría por inducción el mismo resultado que ellos expresamente prohibieron hacer a la corte,—lo que es, o puede ser, privar a la esposa de su título a todos los bienes gananciales que han quedado en poder del marido? Semejante resultado difícilmente pudo haber sido previsto.' * * *

''Que en Puerto Rico una esposa divorciada se considera que tiene un interés en los bienes gananciales aunque la sentencia de divorcio no haga disposición alguna en cuanto a ellos, parece haber sido reconocido en el caso de *Garrozi* v. *Dastas,* 204 U. S. 64, 51 L. ed. 369, 27 Sup. Ct. Rep. 224, en el cual se permitió a una esposa divorciada esta-

blecer una acción para anular traspasos simulados hechos por su esposo de los bienes gananciales.'' 11 L. R. A. (N. S.) 103, nota al caso de *Dominiki Ambrose* v. *August Ambrose Moore.''*

Ni el artículo 174 ni el No. 1301, ni el No. 1322, ni ningún otro artículo de nuestro Código Civil prescribe que las manifestaciones o admisiones contrarias al interés hechas por el marido en cuanto a la naturaleza privativa de la propiedad adquirida por la esposa se presumen falsas, o que un traspaso que contiene tales manifestaciones y declaraciones y por el cual se traspasan bienes inmuebles de un tercero a la esposa se presume que simula una donación por el marido.

"Las palabras 'inferencia', 'probabilidad', 'suposición' y 'presunción' tienen sustancialmente la misma significación y alcance que cuando se usan en escritos y opiniones legales. De tiempo en tiempo se han hecho tentativas por establecer distinciones entre varias de estas palabras pero en el lenguaje legal así como en el ordinario no se reconocen tales sutilezas de expresión.'' 10 R. C. L., p. 867, sec. 10.

"Ocurre frecuentemente que los mismos hechos dan lugar a dos presunciones y que éstas presunciones están en conflicto la una con la otra. En esta situación una de las presunciones ha de ceder. La fuerza de ellas debe medirse y la menos fuerte se considerará anulada por la más fuerte. Cada caso será regulado, por supuesto, por sus propios hechos.'' *Idem,* p. 869, sec. 12.

"Es una regla bien establecida que una presunción puede legalmente permitirse solamente cuando los hechos de los cuales surge la presunción se prueban por evidencia directa y esa misma presunción no puede inferirse de otra. Sostener que un hecho que se infiere o presume se convierte inmediatamente en un hecho establecido con el fin de que sirva de base a una inferencia o presunción ulterior sería llevar la cadena o serie de presunciones a la región de la más atrevida conjetura.'' *Idem*, 870, sec. 13.

"Una inferencia de hecho no debe establecerse de premisas que sean dudosas, pero los hechos en los cuales lógicamente puede descansar una inferencia, se dice que deben establecerse por prueba directa como si fueran los hechos mismos en litigio. De aquí se sigue que una presunción no puede basarse en otra presunción.'' 22 C. J., p. 84, sec. 27.

Un traspaso de bienes inmuebles hecho a una mujer ca-

sada como privativos de ella con el expreso consentimiento de su marido a tal forma de traspaso y que contiene otros detalles que indican el verdadero origen del precio de venta, aunque no sea de tal fuerza probatoria que anule enteramente la presunción legal respecto al carácter ganancial de la propiedad así traspasada con perjuicio de los derechos de terceros, puede ser inscrito en esta isla por lo que en sí representa, con la debida indicación respecto a los particulares defectuosos de la documentación que se presenta. El hecho de que la esposa alegue que tal propiedad es privativa de ella y que el marido admita que dicha propiedad pertenezca a su esposa exclusivamente queda de tal modo hecho público para todo el mundo; y el hacer mención de la circunstancia de que tal constancia es incompleta es una notificación suficiente para cualquier futuro comprador, acreedor hipotecario u otra persona que negocie con la propiedad de que la presunción legal de su carácter de ganancial no ha quedado enteramente anulada, y puede ser invocada por cualquier persona con derecho a su beneficio.

Si en el presente caso el registrador hubiera inscrito el documento sujeto al mismo defecto subsanable que se menciona en la anterior inscripción respecto a la suficiencia de la prueba presentada en cuanto a la naturaleza privativa de la propiedad, fundando su mención del defecto ya en la anterior inscripción o en el hecho de no presentarse con el documento el contrato de capitulaciones matrimoniales, entonces, por lo menos, podría haberse dicho con cierto grado de razón que era aplicable la doctrina sentada en la resolución de la Dirección General de los Registros de enero 17 de 1913 a que se hace referencia en el caso de Sánchez, pero la calificación que ahora consideramos no se basa en tal fundamento.

Al interpretar cuestiones como ésta es conveniente no perder de vista ciertas modificaciones que han sido introducidas en nuestro Código Civil y la Ley Hipotecaria en años

recientes, ni pasar desapercibido el espíritu y el fin de tales modificaciones.

"Los preceptos del artículo 61 del Código Civil Español, que regía en esta isla, de que sin el permiso o poder de su esposo una mujer casada no podía adquirir por causa o consideración válida o enajenar sus bienes u obligarse ella misma excepto en los casos y con las limitaciones establecidas por la ley, fueron derogados al ser adoptado el Código Civil revisado en el año 1902." *Longpré* v. *El Registrador de San Juan,* 24 D. P. R. 896; *Giménez* v. *El Registrador de la Propiedad,* 21 D. P. R. 329.

Este artículo, tal como estuvo hasta que fué eliminado del código en la revisión que se hizo en el año 1902, era como sigue:

"Artículo 61.—Tampoco puede la mujer, sin licencia o poder de su marido, adquirir por título oneroso ni lucrativo, enajenar sus bienes, ni obligarse, sino en los casos y con las limitaciones establecidas por la ley."

En su lugar el nuevo código citado en último término contenía los siguientes preceptos:

"Artículo 160.—Cada uno de los cónyuges tiene la libre disposición y administración de sus bienes propios.

"Artículo 161.—El marido es el representante legal de la sociedad conyugal.

"La mujer puede por sí contratar y comparecer en juicio para lo que se refiera a la defensa de sus derechos o de sus bienes propios, al desempeño de la patria potestad a la tutela o administración que le confiera la ley y al ejercicio de una profesión, cargo u ocupación." Estatutos Revisados y Códigos de Puerto Rico, pág. 878.

Y por ley de marzo 10 de 1904, el artículo 160 quedó enmendado como sigue:

"El marido y la mujer tendrán el derecho de administrar y disponer libremente de sus respectivas propiedades particulares." Compilación pág. 643.

El primero de marzo próximo será el vigésimo aniversario de "Una ley sobre recursos contra las resoluciones

de los registradores de la propiedad,'' Compilación de 1911, página 450, que deroga ''la Orden General No. 99, de 30 de abril de 1900, y todos los artículos de la Ley Hipotecaria y su reglamento que se opongan a la presente.''

El artículo 4 de esa ley dispone lo siguiente:

''Los registradores no suspenderán por defectos subsanables, la inscripción, anotación o cancelación de ningún título.   En la inscripción harán constar los defectos que tenga el título y en cualquier tiempo en que se presente la documentación para subsanarlo, se hará constar la subsanación por medio de nota marginal.''

Comentando este artículo en el caso de *Rodríguez* v. *El Registrador de Mayagüez,* 26 D. P. R. 74, dijimos:

''En el caso reciente de *Agostini* v. *El Registrador,* esta corte confirmó una nota del registrador en la que se sostenía que un poder sometídole para subsanar el defecto en cuestión era defectuoso e insuficiente para los fines indicados por cuanto en el mismo no se identificaba claramente la descripción de la finca a que el mismo se contraía.

''El presente recurso ha sido interpuesto contra una nota denegando la inscripción otorgada por la dueña de la finca según el registro, 'porque habiéndose denegado la subsanación del defecto consignado en la inscripción 8a. de la finca de que se trata, o sea por la que adquirió la vendedora la finca que transmite al comprador, por no considerarse bastante el poder otorgado por la causante de la señora Agostini y Maristany ni rectificado por el *affidavit* con que se acompañó dicho poder, según la nota marginal de la inscripción citada, adolece la adquisición de la vendedora señora Agostini y Maristany de un vicio de nulidad que incapacita a dicha señora para transmitir a su vez la propia finca.'

''En el caso de *Sucesión Blanco* v. *El Registrador,* 16 D. P. R. 67, al presentarse copias certificadas de una sentencia y una orden, se cancelaron ciertos asientos sujetos al defecto subsanable por no aparecer que la sentencia que ordenaba la cancelación fuera firme.   La subsanación de este defecto fué denegado posteriormente porque el certificado demostrativo de que la sentencia era firme mostraba a su vez que no lo fué en realidad de verdad al tiempo de la inscripción verificada en virtud del mismo, calificando así el registrador nula y sin efecto legal alguno la cancelación de la inscripción.   Esta corte

sostuvo entonces que el estado de derecho creado por inscripciones una vez verificadas debe ser respetado hasta que fuese modificado de algún modo conocido en derecho, que el registrador debió concretarse a determinar si se subsanaba o no con el documento presentado a su consideración el defecto anotado en la inscripción y que la tentativa de pasar sobre la validez de otro instrumento ya inscrito constituía una arrogación de la privativa facultad de las cortes.   Aquella decisión se basó en una expresa disposición legal aún vigente y que se transcribe literalmente en la opinión.

''En el presente caso tanto el recurrente como todo el mundo tenían conocimiento por el registro no sólo de que el título inscrito de la vendedora está sujeto a un defecto subsanable, sino además de que ha fracasado la tentativa que se hizo para subsanarlo.   La validez del título de la vendedora, según aparece del poder a que se contrae el caso de *Agostini* v. *El Registrador* y por la anotación a que el mismo se refiere, depende de una cuestión de identidad de determinada finca vendida por un apoderado y no de una cuestión de capacidad del apoderado para transmitir, como lo arguye el registrador.   El defecto puede ser subsanado en cualquier tiempo por escritura pública que demuestre que la casa a que se contrae el poder es la misma casa vendida por el apoderado y que ahora después de revendida trata de inscribirse a nombre del recurrente.   Nos parece que es suficiente notificación para todas las personas que tengan algo que ver con la finca que puede que sean distintos los hechos y que cuando menos la cuestión está abierta a la duda.   Puede muy bien concebirse que precisamente casos como el presente, en que todas las partes interesadas al parecer conocen los hechos y prefieren que permanezca un defecto técnico en el título inscrito antes de tener que pasar por la molestia y gastos que ocasionan la subsanación inmediata, estuvieron en la mente del legislador cuando con el fin de evitar innecesarios inconvenientes, dificultades o dilaciones ordenó que 'los registradores no suspenderán por defectos subsanables la inscripción, anotación o cancelación de ningún título,' y que 'en la inscripción harán constar los defectos que contenga el título y en cualquier tiempo que se presente la documentación para subsanarlo, se hará constar la subsanación por medio de nota marginal.''

En el caso de *Schroder* v. *El Registrador*, 28 D. P. R. 189, recurso contra la negativa del registrador a inscribir una hipoteca constituída por una mujer casada con la aprobación y ratificación del acto por su esposo respecto a bienes

traspasados a ella como privativos, e inscritos ''con el defecto subsanable de no acreditarse la procedencia del dinero invertido en la adquisición de dicha finca' revocamos la nota recurrida por las razones siguientes:

"La presunción legal del carácter de ganancial de la propiedad envuelta en el caso mientras no se subsane el defecto mencionado en la inscripción, no requiere que los esposos tergiversen los hechos al tratar de dicha propiedad mientras está pendiente la resolución final relativa a la condición legal de dicha propiedad en el registro. Tanto el marido como la esposa parecen considerar la casa como una propiedad privativa de la esposa, pero aparentemente con el fin de evitar cualquier objeción que pudiera hacer el registrador, así como para facilitar la inscripción de la hipoteca constituída por la esposa, el marido ratifica y aprueba expresamente la referida hipoteca. En vista de las circunstancias sería difícil elegir palabras que fuesen más adecuadas para expresar 'el consentimiento expreso de ambos cónyuges,' requerido por el Código Civil como requisito para la enajenación o gravamen de los bienes gananciales. El código no prescribe la fraseología en que habrá de expresarse tal consentimiento y la ratificación y aprobación de envolver alguna cosa que no sea una distinción sin establecer una diferencia, parecen significar algo más que un mero consentimiento."

Y en el caso de *Negroni* v. *Luchetti,* 24 D. P. R. 21, en la página 24, encontramos lo siguiente:

"En otros varios documentos otorgados hacia la misma fecha el referido esposo consintió a su susodicha esposa contratar a nombre propio para efectuar la hipoteca que existía sobre dicha finca. Es cierto, como alega el apelante, que en todas estas transacciones se dió por cierto que la finca pertenecía a los bienes privativos de la esposa, pero creemos que el marido quedó absolutamente obligado por ellas. Ya que su acto de consentir en estos traspasos fuera una ratificación del acto de su esposa, o que estuviera él impedido (*estopped*) para poder alegar cualquier título por razón de sus actos, el resultado es exactamente el mismo. Y el caso no podía variar aún cuando los bienes fueran gananciales y estuviera él consintiendo en su traspaso en la creencia errónea de que eran bienes privativos de la esposa. Se presumía que él conocía la ley."

Examinados a la luz del bosquejo histórico, *supra,* que

reseña el desarrollo del sistema de bienes gananciales en los Estados Unidos y considerados en relación con la serie de sucesos en esta parte del mundo durante las dos últimas décadas, no hay nada obscuro u oculto ya en la fraseología o en el alcance y efecto general de los preceptos legislativos arriba citados, no obstante el carácter radical de los cambios verificados en nuestro Código Civil y de las limitaciones de tal modo establecidas a las algo más que facultades cuasi judiciales ejercitadas por los registradores de la propiedad con anterioridad al cambio de soberanía. Una mujer casada en Puerto Rico hoy tiene el derecho absoluto a manejar y dirigir a su gusto y disponer de sus bienes privativos sin intervención o impedimento por parte de su esposo, o de el registrador de la propiedad.

En el presente caso el vendedor de los edificios y solar adquiridos por la recurrente consta del registro ser el dueño con título inscrito de los mismos como bienes privativos, con sujeción solamente al defecto subsanable en el título inscrito en cuanto a la casa y garage. Cualquier futuro comprador al examinar el registro sabría que los herederos forzosos o cualquier tercero con derecho a invocar la presunción del carácter de bienes gananciales de estos edificios podría establecer una reclamación legal en cuanto a ellos en cualquier tiempo. Si está en su poder el contrato de capitulaciones matrimoniales él podría saber también que el defecto subsanable en cuestión en realidad no existe y que la mención del mismo en el registro puede eliminarse cuando se desee mediante la presentación de tales capitulaciones matrimoniales y pago de los correspondientes derechos. De todos modos él sabría que en cuanto a él, o a cualquier tercero que negocie con la propiedad, el marido por sus propias admisiones contra su interés y por su conducta y actuación, al consentir que queden tales admisiones en record en el registro de la propiedad estaría impedido de alegar cualquier derecho, tí-

tulo o interés en la propiedad que de tal modo se dice que es privativa de la esposa.

Si un comprador en tales circunstancias prefiere correr el riesgo envuelto además de la posibilidad de reclamaciones válidas y no satisfechas que surjan de cualquier decreto de partición que podría ser o no consecuencia de los procedimientos de divorcio, y si los derechos de herederos forzosos y de todas las demás partes interesadas están suficientemente protegidos y garantidos por la mención del alegado defecto subsanable, entonces no podría resultar ninguna injusticia para nadie y el hecho principal en cuanto al verdadero carácter de la propiedad en cuestión es un asunto en el cual el registrador de la propiedad no tiene nada que ver. Lo más que podría hacer sería llamar la atención hacia el defecto subsanable ya anotado y a la omisión en subsanarlo, presentando en unión a la escritura una copia de las capitulaciones matrimoniales u otra prueba suficiente de la veracidad de las manifestaciones contenidas en la escritura. Más que ésto prohibe expresamente el artículo 4 de la ley de marzo primero de 1902 y resolver otra cosa produciría el efecto *pro tanto* de una derogación judicial de esa clara expresión de la voluntad legislativa.

Parece que la casa situada en la finca a que se refiere la inscripción letra "B" fué adquirida por compra en unión del terreno y se describió como parte del mismo en la escritura que fué inscrita sin objeción; pero sin duda debido a una inadvertencia sin hacerse mención de la casa. La certificación de la escritura en la cual se funda el recurrente no contiene ninguna intimación de tal omisión pero el hecho debe resolverse por el contenido de la inscripción sin tener en cuenta lo que pueda mostrar lo que se expresa en la certificación. Esta casa y el terreno por ella ocupado aparece que fueron excluídos expresamente del contrato de arrendamiento a que se ha hecho referencia y por tanto la omisión

en la inscripción no mereció atención entonces. El recurrente insiste en que el error por parte del registrador en dejar de mencionar la casa al inscribir la escritura, tanto en cuanto a la casa como en cuanto al terreno, no debe perjudicar el derecho del dueño a que se inscribiera el mismo; pero según indica el registrador no se hizo petición alguna para que se corrigiera este error y la inscripción ya fuera correcta o no, no puede ser modificada por el único fundamento de las manifestaciones contenidas en los siguientes traspasos de la finca, sino que debe prevalecer hasta que se haga el debido requerimiento y se demuestren hechos satisfactorios acerca de lás razones que hayan para la propuesta modificación.

Para terminar, por tanto, y de acuerdo con las repetidas decisiones de esta corte arriba citadas, y sin desviarnos de la doctrina en ellas enunciada, nos vemos obligados a declarar que la nota recurrida en tanto se refiere a la casa y al garage, y en este sentido atañe a la escritura de abril 24 de 1920, cualquiera cosa que no sea el defecto subsanable ya calificado anteriormente al ser inscrita otra escritura anterior de arrendamiento de abril 15 de 1919, debe ser revocada con instrucciones de que se inscriba dicho traspaso de acuerdo con las prescripciones del artículo 4 de la ley de marzo 1, 1902, sujeto solamente a tal defecto subsanable; y que en tanto se trata de la negativa a inscribir la casa descrita situada en la finca "B", dicha calificación debe ser confirmada.

> *Revocada la nota recurrida en parte y en parte confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.