RAFAEL FUSTER Y FUSTER, demandante y apelante, *v.* AMÉRICA PAONESA Y JULIA B. DE MOYA, demandadas y apeladas.

No. 5224.—*Sometido:* Noviembre 25, 1930. *Resuelto:* Julio 7, 1932.

*Luis T. Camacho* y *F. Beiró Rovira,* abogados del apelante; *T. Bernardini de la Huerta,* abogado de la apelada Julia B. de Moya.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

Julia B. de Moya, mujer casada y demandada en un pleito en cobro de un pagaré otorgado por concepto de un dinero tomado a préstamo por dicha demandada y otra persona, excepcionó la demanda por falta de hechos suficientes para determinar una causa de acción. La corte de distrito sostuvo esta excepción y posteriormente declaró sin lugar la demanda en lo que a la demandada Julia B. de Moya se refería.

La teoría del Juez de distrito fué que el pagaré copiado en la demanda no era una obligación válida en lo que a Julia B. de Moya concernía, toda vez que la misma no demostraba que ella hubiera firmado el pagaré con el consentimiento de su esposo o que la transacción afectaba los bienes privativos de ella.

De conformidad con el Código Civil antiguo el esposo era el representante legal de su mujer. Sin su permiso, salvo ciertas excepciones (como, por ejemplo, en un litigio entre ella y su marido o cuando era acusada en un proceso

criminal), ella no podía comparecer en corte. Artículo 60. Sin el consentimiento de él ella no podía enajenar sus propios bienes, adquirir otros bienes, ni asumir ninguna obligación personal "sino en los casos y con las limitaciones establecidas por la ley." Artículo 61. Es de presumirse que por alguna razón estas y otras disposiciones similares fueron omitidas al hacerse la revisión de 1902. El efecto de tal omisión unido a la readopción de los artículos 1261 y 1263 del código anterior como los artículos 1213 y 1215 del Código Revisado (Revisión de 1930, pág. 257), fué la emancipación de la esposa en lo que a su capacidad para contratar se refería en todas aquellas cuestiones en que los derechos del esposo como administrador y representante legal de la sociedad de gananciales no estaban envueltos. La mujer no puede intervenir con la administración y dominio de los bienes de la sociedad conyugal por parte del esposo ni, excepto en ciertas circunstancias que se especifican, obligar a la sociedad de gananciales. En todos los demás respectos en lo que a su capacidad para contratar se refiere, su libertad es absoluta, o, para decir lo menos, su incapacidad, cualquiera que sea en determinadas circunstancias, está limitada a los casos especificados por la ley.

Bajo el Código Civil anterior la esposa tenía el derecho de administrar sus bienes privativos a menos que ella los hubiese entregado al marido ante un notario. Artículo 1384. Ella no podía enajenar ni gravar sus bienes sin el consentimiento de su marido ni podía comparecer en corte a defender sus propios bienes, sin autorización judicial. Artículo 1387. El artículo 160 del Código Civil Revisado, según fué enmendado en 1904, (artículo 92 de la Revisión de 1930) coloca al marido y a la mujer en igual posición en lo que a la administración, dominio y disposición de sus respectivos bienes privativos se refiere. Bajo el código anterior el marido era el administrador "de los bienes de la sociedad conyugal, salvo estipulación en contrario y lo dispuesto en el artículo 1384." Artículo 59. El artículo 93 del Código Civil

Revisado (Revisión de 1930) retiene al esposo como el representante legal de la sociedad conyugal, pero dispone que "la mujer puede por sí contratar y comparecer en juicio para lo que se refiera a la defensa de sus derechos o de sus bienes propios, al desempeño de la patria potestad, a la tutela o administración que le confiera la ley y al ejercicio de una profesión, cargo u ocupación." Bajo el código anterior el esposo podía disponer de los bienes inmuebles tan libremente como lo podía hacer de sus bienes privativos. Según el artículo 91 del Código Revisado el marido sigue siendo el administrador de los bienes de la sociedad de gananciales "salvo estipulación en contrario", pero los bienes inmuebles "no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento expreso de ambos cónyuges." El mismo artículo provee que "las compras que con dichos bienes haga la mujer serán válidas, cuando se refieran a cosas destinadas al uso de la familia, de acuerdo con la posición social de ésta." Esto no es ni una innovación ni una ampliación de la capacidad de la mujer para contratar. Una disposición similar puede hallarse en el artículo 62 del código anterior. El fin obvio de la disposición conforme ésta lee ahora, de no serlo tal cual estaba originalmente redactada, es permitir que la mujer obligue a la sociedad conyugal por cosas destinadas al uso de la familia y no limitar en forma alguna su capacidad individual para contratar en su propio nombre. Los otros cambios que acabamos de reseñar son sustancialmente y en efecto limitaciones sobre la facultad del marido como administrador de la sociedad conyugal. Los artículos 92 y 93 anticipan y destruyen la posibilidad de cualquier duda que de lo contrario podría surgir en caso de que el marido tratara, como administrador de la sociedad conyugal o como representante de la sociedad de gananciales, de intervenir en la libertad de acción de la esposa en la administración, dominio o disposición de sus bienes privativos o en relación con las otras cuestiones mencionadas en el artículo 93. Niguno

de estos artículos es una remoción parcial de cualquier inca-
pacidad general existente por parte de la esposa para con-
tratar en su propio nombre. De todos modos, sujeto sola-
mente a la excepción arriba enunciada, cualquier incapaci-
dad general fué eliminada al omitir los artículos 60 y 61 y
otras disposiciones similares del Código Civil anterior por la
readopción de los artículos 1261 y 1263 como los artículos
1213 y 1215 de nuestro código actual.

Los requisitos esenciales de un contrato válido, conforme
lo prescribe el artículo 1213, son, primero, "consentimiento de
los contratantes", segundo, "objeto cierto que fuera materia
del contrato", y tercero, "causa de la obligación que se esta-
blezca." El artículo 1215 dispone que "las mujeres casadas,
en los casos expresados por la ley, no pueden prestar consen-
timiento." En esta jurisdicción no existe ninguna otra res-
tricción sobre la capacidad de una mujer casada para con
tratar.

Dinero tomado a préstamo por una mujer casada en su
propio nombre por el cual otorga su pagaré personal no es
un bien ganancial conforme lo define el artículo 1301 del Có-
digo (Revisión de 1930), toda vez que ésta no es una "pro-
piedad adquirida . . . . a costa del caudal común." Empero,
esa no es la cuestión. La obligación asumida por la esposa
al otorgar un pagaré como el que aparece en la demanda del
presente caso no es una obligación de la sociedad conyugal.
Esta no figura entre "las deudas y obligaciones" enumeradas
en el artículo 1308 del Código Civil, (Revisión de 1930). El
documento de su faz no pretende ser tal obligación. La mu-
jer, ordinariamente, no tiene facultad para obligar a la so-
ciedad de gananciales. La persona a quien debía pagarse
el dinero se presume que sabía esto. Si le presta dinero a
ella y acepta su pagaré personal, la presunción es que lo hace
fundándose en la buena fe y crédito de sus bienes privativos
o en alguna otra razón buena y suficiente mejor conocida por
él, y no en la buena fe y crédito de la sociedad conyugal.

██ Es impertinente que el préstamo se basara en la buena fe y crédito de los bienes privativos de la esposa, toda vez que su capacidad para contratar no se limita a cuestiones que afecten sus bienes particulares. Puede que ella no tenga bienes privativos. Tampoco es necesario que ella se establezca primeramente en cualquier profesión, negocio u ocupación. Ella puede tomar dinero a préstamo, si le es posible, basada en el concepto, erróneo o correcto, que el prestamista tenga de su honradez e integridad personales, de su sano criterio comercial, del grado de afecto que le tenga su marido, de la posibilidad de un legado en el testamento de algún pariente rico o de cualquier probabilidad más o menos remota respecto a su habilidad futura para pagar. Tampoco tienen impotancia los motivos que el prestamista haya tenido o la fuente hacia cual él dirige su mirada para el pago. Cuando éste demanda en cobro de pagaré no necesita alegar que el mismo fué otorgado con el consentimiento del marido o que la transacción afectaba los bienes privativos de la mujer, ya que ninguna de estas cuestiones es esencial a la validez de la obligación personal de la mujer.

En el reciente caso de *E. Solé & Co.* v. *Sepúlveda,* 41 D.P.R. 813, esta corte dijo:

". . . Nada hay en la ley que impida a una mujer suscribir un contrato condicional para la compra de un automóvil, ora tenga ella bienes privativos o no. Si ella no los tenía y el contrato fué celebrado sin el consentimiento del esposo, o no se podía inferir una agencia, en general la sociedad de gananciales no sería responsable."

Véase también *Peraza* v. *Registrador de Arecibo,* 30 D. P.R. 537; *Sojo* v. *Registrador de San Juan,* 35 D.P.R. 855; *Hernández Mena* v. *Registrador de Mayagüez,* 22 D.P.R. 642; y *Santini* v. *Flores, ante,* pág. 478.

*La sentencia apelada debe ser revocada y devuelto el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Señor Córdova Dávila no intervino.