VICTORIA VAQUER VELÁZQUEZ, ET AL., recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

Núm. 1102.—*Sometido:* Junio 22, 1942. *Resuelto:* Julio 21, 1942.

C. *Domínguez Rubio*, abogado de los recurrentes; el Registrador recurrido compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

En Guayama, el doce de octubre de 1935, comparecieron ante el notario público Celestino Domínguez Rubio las personas que a continuación se nombran y otorgaron los contratos que, en lo pertinente, narraremos en seguida:

Juana Rodríguez, casada en segundas nupcias, por su propio derecho y en representación de sus hijos menores habidos en su primer matrimonio con Jaime Vaquer, Pedro, Bernardo, Isabel, Antonio y Juana Vaquer y Rodríguez;

Antonio Vaquer, por su propio derecho y como apoderado de Victoria Vaquer y Velázquez, casada y residente en Chile;

Las hermanas Dilta, Hilia, Betina, Josefa y Juana Lamboglia y Pérez; y

Pedro Pérez en su carácter de tutor del menor José Lamboglia y Pérez.

Expusieron que los menores Vaquer Rodríguez, Victoria Vaquer Velázquez y Juana Rodríguez era dueños de catorce fincas que se describen numerándolas del 1 al 14, todas rústicas con excepción de la 8 que es urbana. La mayor es la número uno, que tiene 273 cuerdas;

Que los menores Vaquer y Victoria Vaquer adquirieron dichas fincas por herencia de su padre Jaime Vaquer, y Juana Rodríguez por herencia de su hija Celia Vaquer;

Que las fincas 2, 3, 4, 5, 6, 10, 11, 13 y 14 estaban gravadas por una hipoteca constituída por Jaime Vaquer a favor de Angela Pérez viuda de Lamboglia y que previas las negociaciones preliminares que se indican y la autorización judicial que se transcribe, Juana Rodríguez por sí y en representación de sus hijos los menores Vaquer, de una parte, y Victoria Vaquer, representada por Antonio Vaquer, de la otra, permutaban como en efecto permutaron los condominios correspondientes a la primera parte en la finca número uno, valorados en $9,249.15, por todos los condominios corres-

pondientes a la segunda en las fincas números 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13 y 14, valorados en $2,607, constituyendo la segunda parte, o sea Victoria Vaquer, a favor de los hermanos Lamboglia Pérez, herederos de Angela Pérez viuda de Lamboglia, hipoteca por $6,880 sobre la finca número uno.

Los comparecientes hermanos Lamboglia Pérez cancelaron a su vez la hipoteca que pesaba sobre las fincas de la herencia constituída por Jaime Vaquer a favor de Angela Pérez viuda de Lamboglia, en atención a la nueva hipoteca constituída por Victoria Vaquer sobre la finca número uno, y de tal modo quedaron Victoria Vaquer dueña de la finca número uno, gravada con hipoteca, y Juana Rodríguez y sus hijos los menores Vaquer dueños de las otras fincas de la herencia, libres de gravámenes.

Presentado el documento en el registro de la propiedad del distrito, el registrador practicó las operaciones que describe en su nota y agregó en la misma lo que sigue:

". . . Se hace constar por vía de aclaración a la presente nota, que la hipoteca que se constituye por doña Victoria Vaquer y Velázquez, por conducto de su apoderado don Antonio Vaquer y Moll, a favor de la sucesión de doña Angela Pérez Fontán quedó inscrita allí donde se expresa.al margen de la descripción de la finca marcada con el número uno, tan sólo en cuanto a la participación que en la citada finca interesa la hipotecante por herencia de su finado padre don Jaime Vaquer y Moll; habiéndose denegado la inscripción en cuanto al resto de dicho inmueble hasta completar la totalidad del mismo, o sea en cuanto a los condominios adquiridos por dicha deudora Victoria Vaquer Velázquez por permuta que le hicieran la viuda y demás herederos de don Jaime Vaquer y Moll, porque si bien tales condominios tienen la aparente condición de bienes privativos, es lo cierto que a juicio del suscribiente conllevan el carácter de gananciales, por cuanto del documento que precede aparece que los condominios privativos que la deudora diera en permuta a la viuda y herederos de don Jaime Vaquer y Moll en otras fincas, están valorados en $2,607, mientras que la participación o condominios que dicha deudora adquiere por dicho concepto o título en la citada finca hipotecada tienen un valor superior a aquéllos, o sea el de $9,249.15, y para compensar la diferencia en dichas cantidades de dinero, la

referida deudora, además de obligarse a pagar ciertas cantidades de dinero que se reseñan en el propio documento como deudas de la sucesión de don Jaime Vaquer y Moll, constituye también el derecho de hipoteca objeto de esta nota en garantía de pago de otra deuda hipotecaria contraída por el causante de dicha sucesión, obligando de este modo para el cumplimiento de dichas obligaciones la sociedad de gananciales constituída entre la deudora Victoria Vaquer y Velázquez y su esposo Miguel Roselló, que si bien no se nombra en la escritura de hipoteca, permuta y otros extremos, su nombre se consigna en el documento de ratificación otorgado por su dicha esposa ante el Vice-Cónsul de los Estados Unidos de América en la ciudad de Santiago, Provincia de Santiago, Chile, que se tiene a la vista, sin que resulte en forma alguna que el citado esposo Miguel Roselló haya consentido o ratificado todo lo convenido por su citada consorte en el expresado documento, . . .''

No conforme con la declaración que afecta sustancialmente los derechos de las partes contratantes, éstas, por medio de abogado, interpusieron el presente recurso gubernativo, solicitando su revocación.

La diferencia de criterio entre el registrador y los recurrentes consiste en que los recurrentes sostienen que la finca número uno es y debe inscribirse como un bien privativo de Victoria Vaquer y por consiguiente que la nueva hipoteca estuvo bien constituída por ella sola aunque fuera casada, y el registrador entiende que dicha finca es privativa de Victoria Vaquer únicamente en cuanto al condominio adjudicádole en la herencia de su padre—luego admite que también lo es en cuanto al montante de sus condominios en las otras fincas de la herencia que permutara por el de los otros herederos en la dicha finca—y, por tanto, que siendo ganancial la adquisición, no puede hipotecarse válidamente sin la intervención del marido.

La cuestión es nueva en esta jurisdicción. Veamos en primer lugar lo que la ley prescribe. El título III del libro cuarto del Código Civil, edición 1930, está por entero dedicado a regular el contrato sobre bienes con ocasión de matrimonio, tratando de los bienes de la propiedad de cada

uno de los cónyuges la sección segunda del capítulo IV de dicho título. Dice el primer artículo de la sección, o sea el 1299, que equivale al 1396 del Código Civil Español:

"Son bienes propios de cada uno de los cónyuges:

"1. Los que aporte al matrimonio como de su pertenencia.

"2. Los que adquiera durante él, por título lucrativo, sea por donación, legado, o herencia.

"3. Los adquiridos por derecho de retracto o por permuta con otros bienes, pertenecientes a uno solo de los cónyuges.

"4. Los comprados con dinero exclusivo de la mujer o del marido."

Comentando Manresa el precepto, agrupa en dos los bienes privativos, a saber: 1. Capital propio directamente de cada uno de los cónyuges, y 2. Bienes privativos de cada cónyuge por sustitución o subrogación.

No hay duda de que en este caso el condominio adquirido por Victoria Vaquer en la finca número uno al distribuirse la herencia que dejó su padre, está comprendido en el primer grupo y que también lo estaban los condominios que tenía en los otros inmuebles de la herencia. ¿Lo está en el segundo el resto de la finca número uno que adquirió por el contrato de permuta que celebrara con sus coherederos? Contestar esa pregunta es resolver el recurso. Dice Manresa, refiriéndose al segundo grupo:

"Durante el matrimonio no es lo más natural que los bienes aportados o adquiridos se conserven siempre los mismos. Unos se consumen, otros se cambian o se venden, otros se extinguen y se sustituyen por una indemnización, etc., y todos estos hechos dan lugar a una transformación en los bienes de cada cónyuge, que van en parte y sucesivamente cambiándose o sustituyéndose por otros.

"Nuestro Código acepta en absoluto el principio de la subrogación, de modo que, en principio, todo lo que durante el matrimonio adquieren privativamente el marido o la mujer, en sustitución o representación de otros bienes que ya anteriormente les pertenecían, queda subrogado en el lugar de éstos y se entiende que forma parte de su capital privativo. La ley sólo exige la prueba de la verdad de esa sustitución, o que ésta resulte cierta con toda evidencia. En caso de duda, considera los bienes como gananciales (art. 1407)."

Y luego agrega, refiriéndose a los bienes adquiridos por permuta:

"Cambio de una finca por otra, de alhajas, de semovientes, etc., cuando el acto deba calificarse de permuta. Lo adquirido sustituye siempre a lo transmitido, cualquiera que sea su valor.

"Como expresamos en el comentario del art. 1337, si permután-dose dos fincas se recibe un saldo en dinero e ingresa en la sociedad, la sociedad deberá este saldo al cónyuge subrogante; y si, por el contrario, la sociedad tuviese que abonar algún exceso, éste se deberá por el cónyuge a la sociedad."

El comentario de referencia, en lo pertinente, es como sigue:

"*Permuta con otros bienes dotales.*—La sustitución o subrogación se presenta aquí con toda evidencia. Nada más natural que si el inmueble dado en permuta por la mujer era dotal, tenga igual ca-rácter el inmueble adquirido en su sustitución. Pero no siempre son de igual valor los bienes permutados. . . .

". . . Si el inmueble adquirido por la mujer es de menor valor que el transmitido, desde luego aquél es dotal, y la diferencia de valor supone además un ingreso en la sociedad conyugal, del cual el marido responde a la mujer o sus herederos, pues en su día habrá de restituir en metálico esa diferencia.

"Si el inmueble adquirido en permuta es de más valor que el entregado, la sociedad conyugal tendrá que abonar en metálico la diferencia. Ese metálico puede proceder del capital privativo del marido, del de la mujer o de los gananciales. ¿Se entenderá que el exceso del valor de la finca, o sea la participación indivisa que represente, pertenece a aquél de quien el metálico procede? Enten-demos que no: primero, porque el artículo 1337, sin distinguir, pre-viene que, en caso de permuta, el inmueble adquirido sustituya al que se entregó, y tenga, como éste, el carácter dotal; segundo, por-que la ley repugna la indivisión, y la indivisión resultaría si el exceso de valor de la finca permutada perteneciese, ya al marido, ya a la comunidad. Pero como no sería justo que la mujer se en-riqueciese a costa del marido o de la sociedad, y como prescindir de la procedencia del metálico equivaldría a consentir durante el matrimonio donaciones entre los cónyuges, de la permuta en el caso expuesto, nace forzosamente un crédito a favor de la persona o en-tidad que facilitó el metálico, no siendo la mujer, cuyo crédito ha

de tenerse en cuenta en su día al procederse a la liquidación de la sociedad conyugal. Si el exceso se pagó con fondos de la dote, no hay cuestión."

Véase 9 Manresa, Comentarios al Código Civil, cuarta edición, 1930, 493, 494 y 254.

No hace referencia específica el comentarista a la adquisición por permuta de un inmueble de mayor valor, hipotecado o que se hipoteque por la diferencia, pero sí se observa que pone énfasis en que el bien que se adquiere en todo caso conserva la misma condición que tenía el que se dió por él. A ese mismo respecto véase *Cot v. El Registrador de la Propiedad*, 15 D.P.R. 482, que se cita como autoridad en 31 C. J. 28, párrafo 1109, para sostener el siguiente texto,

"Propiedad que se recibe a cambio de otra propiedad, bien en comunidad o separada, como regla general adquiere el carácter de la propiedad por la cual se cambia."

Véase también McKay *on Community Property*, edición 1910, página 147.

Los bienes que Victoria Vaquer permutó por los condominios de sus coherederos en la finca número uno eran bienes privativos y privativa debe ser en su consecuencia la adquisición.

La diferencia en el valor de los condominios permutados es aparente, no real, porque la constitución de la nueva hipoteca no fué en verdad la de un gravamen nuevo sino un mero traspaso del que el causante de todos los contratantes constituyó sobre varias fincas, a una sola de ellas. El valor de lo aquirido libre del gravamen por Victoria Vaquer en la finca en cuestión, estaba en armonía con el del que ella dió en permuta a sus coherederos. En el momento del contrato— y es el contrato lo que se inscribe en el Registro—lo que pasó a Victoria Vaquer no fué una finca libre, como fincas libres fueron las que pasaron a sus coherederos, si que una finca sujeta a una hipoteca por más o menos la diferencia

entre su valor total y el que ella dió en bienes privativos en el contrato de permuta.

Esto no quiere decir que sostengamos que en el caso de que la hipoteca se pagara con bienes de la sociedad de gananciales, ésta no tenga derecho alguno. Lo tiene.

Del mismo modo que, según el artículo 1304 de nuestro Código, son gananciales las expensas útiles que se hagan en los bienes peculiares de cualquiera de los cónyuges mediante anticipos de la sociedad, si la hipoteca constituída por Victoria Vaquer sobre su finca privativa—la número uno—adquirida por herencia y por permuta de otros bienes privativos suyos, fuera satisfecha con dinero de la sociedad ganancial, a la sociedad se acreditaría el anticipo, pero el hecho no destruiría la condición de privativo del bien mejorado a virtud de la liberación del gravamen que pesaba sobre el mismo.

El caso sería igual a si la esposa hubiera heredado desde un principio la finca número uno por entero, no gravada en unión de otros si que pesando en su totalidad sobre ella la hipoteca constituída por su causante Jaime Vaquer.

*Por virtud de todo lo expuesto debe revocarse la nota en la parte en que fué recurrida y ordenarse la inscripción de la permuta y la hipoteca de que se trata en su totalidad, sin reservas ni aclaraciones.*