LUCÍA BABILONIA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE AGUADILLA, recurrido.

Núm. 1127.—*Sometido:* Noviembre 1, 1943. *Resuelto:* Diciembre 10, 1943.

*García Méndez & García Méndez,* abogados de la recurrente; el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

En 1938 la recurrente compró tres fincas mediante escritura en la cual se hacía constar que ella era una señora casada domiciliada en Aguadilla. Se inscribió esta escritura "con el defecto subsanable de no haberse acreditado en forma alguna que el dinero invertido en dicha compra fuera de la exclusiva pertenencia de la adquirente."

En 1943 la recurrente solicitó del Registrador que subsanara este defecto. El fundamento de tal solicitud era que la recurrente se casó en 1926 en Nueva York, donde ella y su esposo tenían su domicilio en aquella época; que por lo tanto las leyes de Nueva York rigen los derechos de su esposo sobre bienes inmuebles adquiridos por ella posteriormente en Puerto Rico; que la sociedad de ganciales no existe en Nueva York; y por tanto que los bienes inmuebles envueltos en este caso son propiedad privativa suya.

En apoyo de su petición, Lucía Babilonia radicó declaraciones juradas por ella y por su padre, al efecto de que en 1926 ella salió de Puerto Rico y fué a Nueva York, donde estableció su domicilio; que mientras estaba domiciliada en Nueva York contrajo matrimonio con Antonio Mas, quien había estado domiciliado en Nueva York por un número de años con anterioridad a su matrimonio; que ella y su esposo tuvieron su domicilio en Nueva York hasta 1929, cuando "debido a dificultades económicas [ellos] se trasladaron temporalmente a Aguadilla y aquí [ellos] vivieron por algún tiempo hasta que [su] esposo, en 4 de diciembre de 1935, se fué para la ciudad de Nueva York y [la] abandonó, estableciendo entonces su residencia en Nueva York y conservando allí su domicilio."

La recurrente también suministró al Registrador un documento debidamente autenticado que expresaba que en 1926 en Nueva York el secretario de una corte "celebró los ritos matrimoniales entre Antonio Mas de Nueva York . . . . y Lucía A. Babilonia de Nueva York . . .".

El Registrador rehusó subsanar el referido defecto por el fundamento de que "no obstante haberse celebrado el matrimonio en la ciudad de Nueva York las dos declaraciones juradas que se acompañan no son suficientes para establecer el hecho de que doña Lucía Babilonia y don Antonio Mas estuvieran domiciliados en y fueran ciudadanos del estado de New York, a los efectos del estatuto personal, apareciendo como aparece de la propia escritura de adquisición de estas

fincas que a la fecha de su otorgamiento doña Lucía Babilonia estaba domiciliada en la ciudad de Aguadilla, Puerto Rico . . . ''. La recurrente ha apelado de esa nota del Registrador.

Sostiene que su caso se rige por la doctrina expuesta en *Bartholomew* v. *Allen et al.,* 24 D.P.R. 370, y en *Cothran* v. *Registrador de Arecibo,* 25 D.P.R. 646.

El matrimonio en este caso no se contrajo sujeto al régimen de la sociedad de gananciales, toda vez que dicha regla de propiedad matrimonial no está en vigor en Nueva York. Sin embargo, en cuanto a bienes inmuebles adquiridos con posterioridad al matrimonio, no cabe duda de que el estatuto real, y no el personal, es el que rige. Esto ha sido siempre elemental, tanto en las jurisdicciones donde rige el derecho civil, como en aquéllas en que rige el derecho común.[1] ''Los estatutos franceses y españoles reguladores de los derechos de propiedad de marido y mujer eran estatutos reales y no personales. Se aplicaban a cosas y no a personas y eran aplicables a todas las adquisiciones hechas en esos países por personas casadas, fueran o no residentes en ellos.'' (*Hammonds* v. *Commissioner of Internal Revenue,* 106 F. (2) 420, 423 (C.C.A., 10mo Circuito, 1939)). Véase *Commissioner of Internal Revenue* v. *Skaggs,* 122 F. (2) 721, 23.

Comentando los artículos 9 al 11 del Código español, dice Manresa que los bienes inmuebles, por formar parte del territorio del estado, o estar a él íntimamente unidos, y por los conflictos que originaría el que se rigieran por leyes diversas, se someten en todas las legislaciones que conoce al estatuto real, y a continuación cita la siguiente doctrina del Tribunal Supremo de España:

''De otra manera fácil sería a una nación lastimar a las demás en un derecho tan alto y sagrado como es el del dominio, que todas ejercen de un modo absoluto sobre su territorio.'' Sentencia de 23 de octubre de 1873; 1 Manresa 100.

[1] 1 Manresa 100–2; Leflar, Community Property and Conflict of Laws, 21 Calif. L. Rev. 221, 24, 30 (1933); Restatement, Conflict of Laws, §237–8; 2 Beale, The Conflict of Laws, pág. 952.

Parece conveniente transcribir lo dicho por Manresa respecto a las cuestiones de derecho internacional privado que se suscitan en relación con los bienes inmuebles. Dice así:

"Los tratadistas de Derecho internacional privado suscitan una importante cuestión acerca de la forma en que se constituyen los derechos reales. Si se reconoce la libertad de las partes al constituirlos, imponiéndoseles escasas limitaciones, ¿por qué motivo, dicen, no han de poder sustituir su ley personal a la real, aun tratándose de bienes inmuebles? Entendemos que no, por la razón sencilla de que es ésta una de tantas restricciones de la libertad de contratación y a la que, por referirse a su soberanía, no renuncia el Estado. Así lo comprendió el Tribunal Supremo al declarar en su sentencia de 21 de enero de 1874, que 'la eficacia de los contratos o actos que afectan directamente la propiedad inmueble se regulan por la ley del Estatuto Real'; . . ." 1 Manresa 102.

El artículo 10 del Código Civil pone punto final a esta cuestión. Dispone que "Los bienes muebles están sujetos a la ley de la nación del propietario; los bienes inmuebles, a las leyes del país en que están sitos."

■■ Alega la recurrente que el matrimonio contraído en Nueva York, cuando se le adiciona el domicilio de ambos contrayentes en dicho Estado a la fecha del matrimonio, debería dar lugar a una regla de derecho al efecto de que los derechos matrimoniales de los respectivos cónyuges sobre propiedad inmueble adquirida por uno de ellos en Puerto Rico se regirán durante el período matrimonial por las leyes de Nueva York. Aparte del hecho de que el artículo 10 de nuestro Código conduce a un resultado contrario, los hechos del presente caso ofrecen un ejemplo gráfico de los peligros inherentes a la regla propuesta por la recurrente. Tenemos aquí una puertorriqueña que estuvo ausente de la isla por espacio de tres años solamente, de 1926 a 1929. Sin embargo, por el hecho de haberse casado en Nueva York en 1926 y haber permanecido domiciliada allí por tres años, se intenta en este caso aplicar a bienes inmuebles situados en Puerto Rico y adquiridos por ella en 1938, nueve años después de

haber reasumido su domicilio en Puerto Rico, la regla que rige en Nueva York sobre bienes inmuebles adquiridos por una esposa durante su matrimonio, más bien que la regla de Puerto Rico. La celebración del matrimonio en Nueva York, más el domicilio temporal en Nueva York, no son suficientes para justificar tan radical abandono de nuestra regla local sobre derechos de propiedad. (Véase Marital Property Rights and the Conflict of Laws, 43 Harv. L. Rev. 1286).

Esta Corte, en los casos de *Bartholomew*, de *Cothran*, supra y de *Antongiorgi* v. *El Registrador de la Propiedad*, 6 D.P.R. 239, resolvió que la celebración de un matrimonio en Nueva York es por sí sola suficiente para hacer aplicable a bienes inmuebles adquiridos en Puerto Rico con posterioridad al matrimonio, la ley de Nueva York sobre propiedad matrimonial en lugar de la regla de Puerto Rico sobre bienes gananciales. Dichos casos fueron erróneamente resueltos y se revocan expresamente.

La recurrente y su esposo estaban domiciliados en Puerto Rico y no en Nueva York en la fecha en que se adquirió en Puerto Rico la propiedad en cuestión. Por tanto, no está expresamente envuelta en este caso la cuestión de si el domicilio en Nueva York en la fecha de la adquisición traería como resultado el hacer aplicable a la propiedad en cuestión la regla de dicho Estado sobre bienes matrimoniales en lugar de nuestra propia regla sobre bienes gananciales. Pero en vista del hecho de que el estatuto real impera, no vemos qué efecto pueda tener el domicilio sobre la cuestión aquí envuelta, excepto a los fines que más adelante se indicarán.

La recurrente tiene derecho a probar que el dinero con el cual compró los bienes inmuebles en cuestión fué obtenido por ella mientras estaba domiciliada en Nueva York. Bajo esas circunstancias, la ley de su domicilio para aquel entonces se aplicaría a dicho dinero, convirtiéndolo en propiedad privativa, y los bienes inmuebles adquiridos por ella en Puerto Rico con dicho dinero vendrían a ser su propiedad

privativa. "La regla general en los estados en que rige la sociedad ganancial, al efecto de que los derechos matrimoniales sobre tierras, prescindiendo de la residencia del marido o de la esposa, están regulados por la ley del sitio donde radican, está sujeta a la limitación de que cuando se adquieren bienes en un Estado donde rige la sociedad de gananciales, mediante compra con fondos que son propiedad privativa de uno de los cónyuges o a cambio de propiedad privativa de uno de los cónyuges, la naturaleza de los fondos o de la propiedad dada en cambio se transmite a la propiedad así adquirida. Los bienes privativos continúan siendo privativos a través de todas sus alteraciones y cambios siempre que puedan ser seguidos e identificados con claridad y sin lugar a dudas." (*Hammonds* v. *Commissioner of Internal Revenue*, supra, pág. 424). Véase la Anotación "Change of domicile as affecting character of property previously acquired as separate or community property," 92 A.L.R. 1347; 29 L.R.A. (N. S.) 781.

No obstante haber revocado la decisión del caso de *Bartholomew*, la manifestación allí contenida al efecto de que el marido es el dueño exclusivo de los bienes en cuestión si los compró con su dinero propio, está correctamente expuesta de conformidad con la doctrina de la "procedencia" (*source doctrine*) que acabamos de indicar.

De no existir tal prueba del carácter privativo del dinero con el cual se adquirieron estos bienes inmuebles, los artículos 1301 y 1307 del Código Civil[2] son de aplicación a los hechos del presente caso.

*Se confirmará la nota del Registrador.*

---

(2) Los artículos 1301 y 1307 dicen en parte como sigue:

"Artículo 1301.—Son bienes gananciales:

"1. Los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, *bien para uno solo de los esposos.*

" *     *     *     *     *     *     * "

(Bastardillas nuestras.)

"Artículo 1307.—Se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer."