ADA LANAUSSE, demandante y recurrente, *v.* ROSITA SILVA, demandada y recurrida.

Número: 131    Resuelto: 26 de febrero de 1962

*Jorge V. Toledo* y *José Nilo Dávila Lanausse,* abogados de la recurrente; *E. Ramos Antonini* y *Alvaro Ortiz,* abogados de la recurrida.

Sala integrada por el Juez Presidente Señor Negrón Fernández como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Ada Lanausse, mujer casada, convino en comprar a Rosita Silva una casa por la cantidad de $14,000.00. La compradora pagaría $5,000 en efectivo provenientes de fondos privativos[1] y asumiría el pago de una hipoteca que gravaba el inmueble por la cantidad de $5,000. Los restantes $4,000 se aplazarían en cuanto a su pago y serían garantizados mediante la constitución de una segunda hipoteca sobre el inmueble objeto del contrato.

Cuando todo estaba listo para otorgarse la escritura, la vendedora rehusó firmar. Alegó que era necesaria la comparecencia del esposo de la compradora. Esta sostuvo que no lo era. Inició entonces este pleito para obligar al cumplimiento específico de lo pactado y, además, reclamó $1,500[2] por daños sufridos. La vendedora contrademandó por $3,000

---

[1] En el alegato de la vendedora aquí recurrida se discute la cuestión que este recurso plantea como si no estuviera establecido que los $5,000 del pago inicial tienen el carácter de privativos. Pero la realidad es que ese hecho fue admitido mediante estipulación por las partes y ni la sentencia del juez de instancia, ni este recurso se justificarían a no ser que se hubiera efectuado tal admisión. El propio abogado de la recurrente afirmó en el acto de la vista en la cual se aprobó la estipulación que "es como si se hubiera ofrecido la prueba en juicio en el día de hoy y sobre esa prueba se estuviera discutiendo la cuestión de derecho."

[2] Según enmienda en la conferencia preliminar al juicio.

de daños alegadamente sufridos por no llevarse a efecto la transacción con la comparecencia del esposo de la compradora.

Mediante estipulación, las partes sometieron la cuestión de si la compradora necesitaba el concurso de su esposo para asumir la hipoteca existente e incurrir en la obligación del precio aplazado, y constituir una segunda hipoteca en garantía de su pago. El juez de instancia determinó que lo necesitaba.

El art. 61 del Código Civil Español, vigente en Puerto Rico hasta la promulgación del Código Civil Revisado, establecía que la mujer no podía "sin licencia o poder de su marido, adquirir por título oneroso ni lucrativo, enajenar sus bienes, ni obligarse, sino en los casos y por las limitaciones establecidas por la ley." El Código Civil Revisado omitió esta disposición, y por el contrario estableció en el art. 160, correspondiente al 92 de la edición de 1930, 31 L.P.R.A., sec. 285, que "el marido y la mujer tendrán el derecho de administrar y disponer libremente de sus respectivas propiedades particulares" y por el art. 161, 93 de la edición de 1930, 31 L.P.R.A. sec. 286, dispuso, en su parte pertinente que "la mujer puede por sí contratar y comparecer en juicio para lo que se refiera a la defensa de sus derechos o de sus bienes propios . . ."

Así vemos que, siguiendo una tendencia liberalizadora de establecer la igualdad entre los sexos, quedó establecido en nuestro cuerpo legal la capacidad de la mujer para contratar.(³)  *Sociedad Protectora* v. *Registrador*, 29 D.P.R. 974

---

(³) Dispone así la Regla 15.3 de las de Procedimiento Civil de 1958:

"Una mujer casada necesita del concurso de su marido excepto:

(a) Cuando el pleito concierna a sus bienes propios o a su derecho a hogar seguro;

(b) Cuando el pleito sea entre ella y su marido;

(c) Cuando esté viviendo separada de su marido por causa de abandono de cualquiera de los cónyuges;

(d) Cuando el marido y la mujer fueren demandados conjuntamente en el cual caso podrá ella defender su propio derecho, y si el marido dejare de defenderse podrá defender también el derecho de él;

(e) Cuando por ley se disponga lo contrario."

(1921). En *Fuster* v. *Paonesa*, 43 D.P.R. 760 (1932) reconocimos la capacidad de una mujer casada para tomar dinero a préstamo sin necesidad de la concurrencia del esposo. A ese efecto dijimos, a la página 765:

"Es impertinente que el préstamo se basara en la buena fe y crédito de los bienes privativos de la esposa, toda vez que su capacidad para contratar no se limita a cuestiones que afecten sus bienes particulares. Puede que ella no tenga bienes privativos. Tampoco es necesario que ella se establezca primeramente en cualquier profesión, negocio u ocupación. Ella puede tomar dinero a préstamo, si le es posible, basada en el concepto, erróneo o correcto, que el prestamista tenga de su honradez e integridad personales, de su sano criterio comercial, del grado de afecto que le tenga su marido, de la posibilidad de un legado en el testamento de algún pariente rico o de cualquier probabilidad más o menos remota respecto a su habilidad futura para pagar. Tampoco tienen importancia los motivos que el prestamista haya tenido o la fuente hacia cual él dirige su mirada para el pago. Cuando éste demanda en cobro de pagaré no necesita alegar que el mismo fue otorgado con el consentimiento del marido o que la transacción afectaba los bienes privativos de la mujer, ya que ninguna de estas cuestiones es esencial a la validez de la obligación personal de la mujer."

Al mismo efecto, *E. Solé & Co., S. en C.* v. *Sepúlveda,* 41 D.P.R. 813 (1931); *Sociedad Protectora* v. *Registrador,* supra. ■

Se ha establecido, además, que la mujer casada puede adquirir constante el matrimonio, bienes inmuebles, con la aclaración de que debe hacerse constar en la escritura el carácter privativo de la adquisición, y justificarse cumplidamente. *Babilonia* v. *Registrador,* 62 D.P.R. 688 (1943); *Capó* v. *Registrador,* 46 D.P.R. 523 (1934); *Sojo* v. *Registrador,* 35 D.P.R. 855 (1926); *Peraza* v. *Registrador,* 30 D.P.R. 537 (1922); *Sociedad Protectora* v. *Registrador,* supra; *Sánchez* v. *Registrador,* 28 D.P.R. 669 (1920); *Schroeder* v. *Registrador,* 28 D.P.R. 189 (1920); *Fernández*

v. *Registrador*, 26 D.P.R. 741 (1918) ; *Batista* v. *Registrador*, 21 D.P.R. 84 (1914) ; *Feliú* v. *Registrador*, 16 D.P.R. 766 (1910).

Establecido que la mujer casada puede obligarse, así como adquirir bienes inmuebles, sin la concurrencia del marido, pasemos a considerar la cuestión que este caso nos plantea. ¿Es necesaria la concurrencia del esposo cuando la mujer compra un inmueble y para el pago del mismo usa en parte bienes privativos, y por el remanente del precio asume la obligación de pagar un gravamen que afecta el inmueble y constituye una segunda hipoteca para asegurar el pago del remanente? Entendemos que no se requiere tal concurrencia. En el caso que nos ocupa, la mujer se comprometió a pagar $5,000 en efectivo provenientes de su propio peculio. Los $9,000 restantes—$5,000 de la asunción de una hipoteca que gravaba el inmueble y $4,000 que quedaría a deber y garantizaría con una segunda hipoteca—era obligación de la esposa pagarlos y si eventualmente se hacía efectivo con dinero de la sociedad de gananciales o con bienes privativos del marido, esa entidad o el esposo, según fuere el caso, tendrían entonces un crédito que en su día les sería satisfecho al liquidarse la sociedad de gananciales. Cf. *Santiago* v. *Tribunal de Contribuciones*, 69 D.P.R. 305 (1948). El inmueble no pierde la condición de privativo por el hecho de que la compradora quede a deber el remanente. Si la compradora no hiciere efectivo el pago a su vencimiento la vendedora podría ejecutar la hipoteca para hacer efectivo el crédito sin intervención alguna de la sociedad de gananciales. Ver Regla 15.3 de las de Procedimiento Civil de 1958, copiada en el escolio 3.

En el caso de *Vaquer* v. *Registrador*, 60 D.P.R. 722 (1942), consideramos una situación un tanto parecida a la que aquí estudiamos—permuta de un inmueble privativo de la esposa por uno de mayor valor e hipoteca para garantizar el exceso— y al resolverla dijimos a la página 729:

"Esto no quiere decir que sostengamos que en el caso de que la hipoteca se pagara con bienes de la sociedad de gananciales, ésta no tenga derecho alguno. Lo tiene.

Del mismo modo que, según el artículo 1304 de nuestro Código, son gananciales las expensas útiles que se hagan en los bienes peculiares de cualquiera de los cónyuges mediante anticipos de la sociedad, si la hipoteca constituida por Victoria Vaquer sobre su finca privativa—la número uno—adquirida por herencia y por permuta de otros bienes privativos suyos, fuera satisfecha con dinero de la sociedad ganancial, a la sociedad se acreditaría el anticipo, pero el hecho no destruiría la condición de privativo del bien mejorado a virtud de la liberación del gravamen que pesaba sobre el mismo."

La recurrida invoca nuestras decisiones en *Capó* v. *Registrador*, 46 D.P.R. 523 (1934) y *Pérez* v. *Hawayeck*, 69 D.P.R. 50 (1948). Ninguna de las dos le ayuda. En la primera se determinó que el inmueble a adquirirse no era privativo por no haberse establecido, contrario a la situación del caso de autos, que el pago inicial proviniera de fondos particulares de la mujer. En el segundo los fondos con que se pagó la primera cantidad pertenecían a la sociedad de gananciales. ■

Manresa al discutir la permuta de bienes dotales y parafernales, considera una situación que tiene tangencia con el problema que estamos estudiando. Se refiere a la permuta de un bien parafernal o dotal—para el caso sostiene que es lo mismo—por uno de mayor valor, pagándose el exceso con bienes de la sociedad de gananciales o con bienes privativos del otro cónyuge. Sostiene Manresa que el bien adquirido mediante la permuta continúa siendo privativo. Se expresa así a la página 281:

"Si el inmueble adquirido en permuta es de más valor que el entregado, la sociedad conyugal tendrá que abonar en metálico la diferencia. Ese metálico puede proceder del capital privativo

del marido, del de la mujer o de los gananciales. ¿Se entenderá que el exceso del valor de la finca, o sea la participación indivisa que represente, pertenece a aquél de quien el metálico procede? Entendemos que no: primero, porque el artículo 1.337, sin distinguir, previene que, en caso de permuta, el inmueble adquirido sustituya al que se entregó, y tenga, como éste, el carácter dotal; segundo, porque la ley repugna la indivisión, y la indivisión resultaría si el exceso de valor de la finca permutada perteneciese, ya al marido, ya a la comunidad. Pero como no sería justo que la mujer se enriqueciese a costa del marido o de la sociedad, y como prescindir de la procedencia del metálico equivaldría a consentir durante el matrimonio donaciones entre los cónyuges, de la permuta en el caso expuesto, nace forzosamente un crédito a favor de la persona o entidad que facilitó el metálico, no siendo la mujer, cuyo crédito ha de tenerse en cuenta en su día al procederse a la liquidación de la sociedad conyugal. Si el exceso se pagó con fondos de la dote, no hay cuestión." 9 Manresa, Comentarios al Código Civil Español, páginas 281 y 548 (5ta. edición 1950).

Ver además *Usera* v. *El Registrador de San Juan*, 31 D.P.R. 89 (1928); *Cot* v. *Registrador*, 15 D.P.R. 482 (1909); 6 Colin & Capitant, Derecho Civil, pág. 189 (1955); Cf. 5 Castán, Derecho Civil Español, pág. 219 (1954).

Es, pues, claro que los hechos que presenta este caso establecen que el bien a adquirirse por la recurrente continúa siendo privativo y que no se requería la comparecencia del marido para asumir las obligaciones que la transacción convenida conlleva.

*Procede, por tanto, revocar la sentencia recurrida que dictó el Tribunal Superior, Sala de San Juan, con fecha 6 de marzo de 1959 y devolver el caso para ulteriores procedimientos compatibles con lo aquí enunciado.*