AGUSTÍN, ANA MARÍA, EDUARDO y CONSUELO VÉLEZ CORDERO, demandantes y recurridos, *v.* JOSÉ M. MEDINA y ELÍAS NAJUL BEZ, demandados y recurrentes.

*Número:* R-68-327     *Resuelto:* 27 de mayo de 1970

[3] Véase, *Casiano Sales* v. *Lozada Torres,* 91 D.P.R. 488 (1964).

*Vicente Géigel Polanco* y *Vicente Géigel Lanuza,* abogados de los recurrentes; *Miguel A. Juarbe* y *Baltazar Quiñones Elías,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Don Agustín Vélez Cruz adquirió en el año 1919 el predio objeto del presente litigio por permuta con otro privativo suyo. Don Agustín estaba casado para esa fecha con Doña Generosa Cordero Rosa. La transacción de permuta fue debidamente inscrita en el Registro de la Propiedad.

En el 1924 se disolvió el vínculo matrimonial entre ambos, quedando Doña Generosa en el uso y disfrute de la finca para sí y los hijos habidos en el matrimonio, hasta su fallecimiento en mayo de 1963.

En junio de 1963 Don Agustín vendió la finca a los recurrentes José M. Medina y Elías Najul Bez, mediante escritura pública, la cual consta inscrita en el Registro de la Propiedad. Con motivo de esta venta, los causahabientes de Doña Generosa, hijos también de Don Agustín, instaron el presente pleito en el Tribunal Superior, Sala de Aguadilla, alegando que la finca era en parte ganancial por haber Don Agustín pagado en la permuta la cantidad de $660.50 con fondos pertenecientes a la sociedad de gananciales y que Doña Generosa poseyó la finca en concepto de dueña, quieta, pública y pacíficamente por más de 30 años, razón por la cual adquirió por prescripción extraordinaria "cualquier participación que pudiera corresponderle al demandado Agustín Vélez Cruz."

El tribunal de instancia dictó sentencia anulando la venta de 1963 y su inscripción en el Registro, y, otorgándole título de dominio a los recurridos sobre la finca en cuestión, concluyendo, en lo que aquí nos concierne: a) que Don Agustín adquirió la finca estando casado con Doña Generosa mediante permuta con otra privativa suya y devolvió en efectivo la cantidad de $660.50 de origen ganancial; b) que la finca fue poseída hasta el 21 de agosto de 1924 a título privativo en parte por Don Agustín, y, gananciales en parte, por la sociedad de gananciales entre Don Agustín y Doña Generosa; c) que Don Agustín vendió la finca en junio de 1963 a los codemandantes José M. Medina y Don Elías Najul Bez sin el consentimiento ni la concurrencia de Doña Generosa ni sus herederos; d) que desde el 21 de agosto de 1924, fecha en que se disolvió el matrimonio, hasta el 31 de mayo de 1963, fecha en que falleció Doña Generosa, ésta personalmente o mediante sus arrendatarios poseyó en concepto de dueña, quieta, pública y pacífica la finca de este litigio; e) que todo derecho, interés o participación que en la finca objeto de este litigio pudo haber tenido Don Agustín fue

adquirido por Doña Generosa y sus herederos a virtud de la prescripción extraordinaria.

No conforme con dicha sentencia nos solicitan los recurrentes su revocación aduciendo la comisión de varios errores. Estamos de acuerdo que la sentencia es errónea y que la misma no debe prevalecer por los fundamentos que a continuación pasamos a exponer.

No es necesario considerar el apuntamiento que impugna la conclusión de hecho del tribunal de instancia de que al adquirir Don Agustín la finca él abonó la diferencia en valor con fondos provenientes de la sociedad de gananciales. Cualquiera que fuese la conclusión en uno u otro sentido—bien que fue Don Agustín el que pagó la diferencia por ser su finca de menor valor que la que adquirió, o, bien que fue Don Agustín el que recibió el pago a su favor por ser su finca más valiosa—no variaría el carácter privativo de la finca adquirida en permuta. [1]

---

[1] La contención de los recurrentes es que, contrario a la conclusión del tribunal de instancia, la prueba revela que fue Don Agustín el que recibió un pago de $660.50 por el exceso de valor de su finca.

La única prueba sobre este hecho consiste de la escritura Núm. 144 otorgada ante el notario Mariano R. Acosta el 24 de noviembre de 1919. El texto de dicha escritura es sumamente contradictorio y, en realidad, no da base para llegar a conclusión alguna. En el párrafo segundo se hace constar que la finca adquirida por Don Agustín de Doña Eladia de la Rosa y López tiene un valor de $1,773. En el párrafo tercero se hace constar que la finca que Don Agustín transfiere en permuta a Doña Eladia tiene un valor de $1,112.50. Hasta aquí es claro que la finca de Don Agustín tenía menos valor y, por consiguiente, él abonó con fondos provenientes de la sociedad de gananciales el exceso del valor. Sin embargo, en el párrafo quinto se dice todo lo contrario.

"Quinto:—Y teniéndolo así convenido los comparecientes, permutan los predios de terreno agrupado y segregado; y en su virtud doña Eladia de la Rosa adquiere las veinte y nueve cuerdas cuarenta y seis céntimos descritas en el hecho cuarto y don Agustín adquiere las catorce cuerdas veinte y cinco y medio céntimos agrupadas y descritas en el hecho Segundo, *y habiéndose valorado las primeras en mil setecientos setenta y tres dollars y las segundas en mil ciento doce dollars cincuenta centavos, doña Eladia abonó a don Agustín la diferencia de precio de seiscientos sesenta dólares cincuenta centavos,* cuya suma éste confiesa haber recibido antes de este

■ El error del tribunal, precisamente, consiste en creer que este hecho alteraba el carácter privativo de la finca adquirida en permuta por Don Agustín, confiriéndole un carácter dual: privativo en la proporción del valor de la finca original de Don Agustín, y, ganancial, en proporción a los fondos de la sociedad de gananciales invertidos en la permuta. Tal determinación es errónea, pues, los bienes adquiridos por permuta con otros privativos no pierden nunca su carácter privativo. El carácter del título original—ganancial o privativo—se mantiene por subrogación en los bienes adquiridos independientemente de la diferencia en valor entre uno y otro. La sociedad de gananciales, en caso de tenerse que abonar algún exceso, sólo tendría un crédito contra el cónyuge adquirente. Manresa, IX *Comentarios al Código Civil*, 662 (6ta. ed.); Scaevola, XXII *Código Civil* 299 (2da. ed.); Castán, V-I *Derecho Civil Español, Común y Foral* 270 (8va. ed.).

Al efecto expresa Manresa:

"Si el inmueble adquirido en permuta es de más valor que el entregado, la sociedad conyugal tendrá que abonar en metálico la diferencia. Ese metálico puede proceder del capital privativo del marido, del de la mujer o de los gananciales. *¿Se entenderá que el exceso del valor de la finca, o sea la participación indivisa que represente, pertenece a aquel de quien el metálico procede? Entendemos que no.* Primero, porque el artículo 1.337, sin distinguir, previene que, en caso de permuta, el inmueble adquirido sustituya al que se entregó, y tenga, como éste, el carácter dotal. Segundo, porque la ley repugna la indivisión, y la indivisión resultaría si el exceso de valor de la finca permutada perteneciese, ya al marido, ya a la comunidad. Pero como no sería

acto a su satisfacción de aquella señora, a cuyo favor otorga carta de pago, y ambos se trasmiten entre sí las fincas permutadas con todos sus usos, costumbres, servidumbres y demás derechos inherentes, quedando obligados uno para el otro a la evicción y saneamiento con arreglo a derecho." (Bastardillas nuestras.)

Sea como fuere, la conclusión del Tribunal sobre este hecho no altera el carácter privativo del inmueble adquirido, según exponemos en el texto de esta opinión.

justo que la mujer se enriqueciese a costa del marido o de la sociedad, y como prescindir de la procedencia del metálico equivaldría a consentir durante el matrimonio donaciones entre los cónyuges, de la permuta en el caso expuesto, nace forzosamente un crédito a favor de la persona o entidad que facilitó el metálico, no siendo la mujer, cuyo crédito ha de tenerse en cuenta en su día al procederse a la liquidación de la sociedad conyugal. Si el exceso se pagó con fondos de la dote, no hay cuestión." Manresa, IX *Comentarios al Código Civil Español* 345. (Bastardillas nuestras.)

Por otro lado, si admitiéramos la determinación del tribunal sentenciador sobre el carácter dual de la finca, tampoco podría operar la prescripción extraordinaria en beneficio de Doña Generosa. En tal supuesto, tanto Doña Generosa como Don Agustín serían copropietarios de la finca.

■ Como es sabido, es principio fundamental de la comunidad de bienes que los actos de un comunero o copropietario benefician o perjudican a todos los demás. La posesión por uno de ellos en concepto de dueño aprovecha a la comunidad y no al comunero exclusivamente, ya que éste posee, no para sí mismo, sino en representación de los demás. Así lo prescribe taxativamente el Art. 1833 del Código Civil:

"La prescripción ganada por un copropietario o comunero aprovecha a los demás."

Por lo tanto, si la sociedad de gananciales era copropietaria de la finca junto a Don Agustín, al disolverse la sociedad por el divorcio, Doña Generosa se convirtió en comunera y, en virtud del citado Art. 1833, su pretensa posesión aprovechaba también a Don Agustín, no pudiendo adquirir la participación de éste mediante la prescripción extraordinaria.

Pero, como esta determinación del tribunal no es correcta, y por el contrario, hemos establecido que la finca es de carácter privativo, Doña Generosa muy bien podía adquirirla por prescripción extraordinaria poseyéndola en concepto de dueño por más de 30 años. Art. 1859 del Código Civil, 31 L.P.R.A.

sec. 5280. Esto nos lleva a considerar otro apuntamiento de los recurrentes relacionado con la naturaleza de la posesión ejercitada en la finca por Doña Generosa.

■ El tribunal de instancia concluyó que la posesión de Doña Generosa fue en concepto de dueño. No hay duda de que los actos que ella realizaba en la finca, tales como cultivarla, arrendarla y pagar las contribuciones, son actos exteriores de goce y disfrute que usualmente se llevan a cabo por el verdadero dueño. Dichos actos generalmente dan base razonable al resto de la comunidad para considerar que quien los ejercita es el verdadero dueño. Es precisamente esta opinión general o creencia pública lo que le imparte a la posesión el concepto de dueño, independientemente de la creencia que sobre el particular pueda tener el propio poseedor. *Dávila* v. *Córdova*, 77 D.P.R. 136 (1954), Manresa, *op. cit.*, tomo IV, pág. 83.

Ahora bien, de la prueba no contradicha surge que Don Agustín adquirió la finca en el 1919 estando casado con Doña Generosa, que ambos vivían con sus hijos, los aquí recurridos, en la finca hasta 1924, fecha en que se disolvió el matrimonio, que Doña Generosa continuó viviendo en la finca, mudándose después para Santurce y arrendándola a diversas personas.

■ De lo anterior es evidente que Doña Generosa entró a vivir en la finca en su calidad de esposa de Don Agustín. Los actos de goce y disfrute que entonces ella pudiera haber ejercitado en la finca los hacía en tal calidad, y por consiguiente, en representación y a nombre de Don Agustín. En nuestro ordenamiento jurídico, los actos posesorios que se ejercitan en representación o a nombre de otro son ineficaces para adquirir el dominio por prescripción extraordinaria, porque no se ejercitan para sí, sino para otro y carecen de la intención de haber la cosa como suya, elemento esencialísimo de la prescripción extraordinaria. Arts. 360, 376 y 1841 del Código Civil, 31 L.P.R.A. secs. 1422, 1462 y 5262.

■ Al disolverse el vínculo matrimonial, su condición de precarista continuó por pura presunción de ley. El Art. 365 del Código Civil así lo establece:

"Se presume que la posesión se sigue disfrutando en el mismo concepto en que se adquirió, mientras no se pruebe lo contrario."

El estado de precariedad no se transforma por la simple voluntad del detentador. Planiol y Ripert, III *Tratado Práctico de Derecho Civil Francés* 162 (Ed. 1942), Colin y Capitant, II-2 *Curso Elemental de Derecho Civil* 523 (1952) Guaroa Velázquez, *Derechos Reales Principales* 289. Como afirman Planiol y Ripert el estado de precariedad es perpetuo por su propia naturaleza y, en principio, subsiste indefinidamente. *Id.*

■ La doctrina reconoce, sin embargo, que el precarista puede invertir su título, sustituyendo la posesión de precario a la posesión en concepto de dueño. Manresa, *op. cit.* Tomo IV 109, 110, Colin y Capitant, *op. cit.* 524, 525. La inversión o interversión de título puede realizarse solamente de dos modos:

a) por causa proveniente de un tercero, como sucedería por ejemplo, si el propietario muere y el arrendatario compra el inmueble a una persona que equivocadamente se hace pasar por heredero del propietario y deja de pagar la renta.

b) por la contradicción opuesta al derecho del propietario, que opera cuando el arrendador se niega a restituir el inmueble reclamando ser el propietario. Planiol y Ripert, *op. cit.* 163, Guaroa Velázquez, *op. cit.* 290.

Puede apreciarse que en ambas formas de interversión de título hay un cambio externo en la conducta del poseedor dejando de pagar renta. No es una simple negación del derecho del dueño por el precarista.

■ Nada hay en la prueba del caso de autos que indique una interversión de título. Por el contrario, aparece que al disolverse el matrimonio, Doña Generosa continuó deten-

tando la posesión material de la finca sin que mediara acto alguno o nuevo título que pudiera indicar un cambio en la causa y el principio de su posesión, que como hemos visto, era de naturaleza precaria. La mera declaración de los recurrentes de que Doña Generosa era la dueña es insuficiente para derrotar la eficacia de la presunción establecida en el citado Art. 365.

*Se revocará la sentencia dictada por el tribunal de instancia.*

El Juez Presidente, Señor Negrón Fernández, no intervino.