EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José A. Torres Vélez<br><br>    Recurrido<br><br>        v.<br><br>Blanca I. Soto Hernández<br><br>    Peticionaria | Certiorari<br><br>2013 TSPR 144<br><br>189 DPR \_\_\_\_ |

Número del Caso: CC-2012-951

Fecha: 11 de diciembre de 2013

Tribunal de Apelaciones: Región Judicial de San Juan

Abogada de la Parte Peticionaria:

        Lcdo. Peter John Porrata
        Lcda. Melissa Díaz Soto
        Lcda. Von Marie Rivera Rivera

Abogado de la Parte Recurrido:

        Lcdo. Víctor M. Rivera Torres

Materia: Derechos Reales – Doctrina de Sustitución o Subrogación de Bienes; doctrina de accesión a la inversa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José A. Torres Vélez                          *Certiorari*

    Recurrido

        v.                              CC-2012-0951

Blanca I. Soto Hernández

    Peticionaria

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 11 de diciembre de 2013.

Comparece ante nos la Sra. Blanca I. Soto Hernández, en adelante, la peticionaria o señora Soto Hernández, mediante un recurso de *certiorari* y nos solicita, *inter alia,* que determinemos la pertinencia de la aplicación de la Doctrina de Subrogación o Sustitución sobre un bien privativo. Concluimos que cuando un bien es adquirido con dinero privativo de un cónyuge y un préstamo a costa del caudal común de la Sociedad Legal de Gananciales, se conforma una comunidad pro-indiviso de acuerdo a las aportaciones realizadas.

Veamos los hechos que dieron génesis a la controversia de autos.

I

La señora Soto Hernández y el Sr. José A. Torres Vélez, en adelante, el recurrido o señor Torres Vélez, vivieron en concubinato desde septiembre de 1989 hasta el 31 de septiembre de 1994, fecha en que contrajeron matrimonio bajo el régimen económico de Sociedad Legal de Gananciales. El 6 de agosto de 2007, el matrimonio fue declarado roto y disuelto por el Tribunal de Primera Instancia.

Así las cosas, el 16 de abril de 2008, el señor Torres Vélez presentó una Sentencia Declaratoria ante el Tribunal de Primera Instancia. Solicitó el dictamen judicial sobre la naturaleza privativa de ciertos bienes adquiridos antes y durante el matrimonio, con el propósito de liquidar la comunidad post-ganancial que se constituyó luego de haber estado casado con la señora Soto Hernández. Esta solicitud respondió a que durante la disolución de la comunidad, el Contador Partidor al que le fue asignada la división no pudo adjudicar varias partidas hasta tanto se resolvieran ciertas diferencias que se suscitaron sobre la naturaleza privativa o ganancial de varios bienes. Procedemos a describir esas partidas y las solicitudes del señor Torres Vélez en la Demanda instada.

El recurrido específicamente solicitó que se le otorgara un crédito por varias propiedades que había adquirido antes de contraer matrimonio y que, por lo tanto,

reclamaba como privativas.[1]    Alegó que mediante la Escritura Núm. Sesenta (60) otorgada ante el Notario Público Jaime Cifre Rodríguez, el 20 de julio de 1978 adquirió el Apartamento C-801, ubicado en el Condominio Tropicana, en Carolina, Puerto Rico. Posteriormente, el 30 de septiembre de 2004, vendió dicha propiedad por la cantidad de ciento cincuenta y seis mil dólares ($156,000.00).  El producto de esa compraventa fue otorgado en préstamo a la corporación Roiter Mechanical Services, la cual le pertenece exclusivamente al señor Torres Vélez.

Una vez la corporación saldó la cantidad adeudada, el señor Torres Vélez y la señora Soto Hernández adquirieron el Apartamento 1207, localizado en Capitol Plaza, en San Juan, Puerto Rico, por la cantidad de trescientos noventa y cuatro mil dólares ($394,000.00).  Esto mediante la Escritura Núm. Quinientos Uno (501) otorgada ante Notario Público el 2 de noviembre de 2005.  Según se desprende de los autos, el monto total se obtuvo con el dinero privativo que le fue devuelto al peticionario por su corporación y por un préstamo que hiciera la Sociedad Legal de Gananciales.  Ante estos hechos y a pesar que para esta fecha ya las partes habían contraído matrimonio, el señor Torres Vélez planteó que el apartamento adquirido era un bien privativo.  Fundamentó su alegación en que la compraventa fue producto de la venta que hiciera del apartamento del Condominio Tropicana.

---

[1] Véase Apéndice, en las págs. 149-153.

Por otro lado, en la Demanda instada el recurrido también reclamó como privativo un terreno ubicado en la Urbanización Bosque de los Frailes. Mientras el señor Torres Vélez y la señora Soto Hernández eran concubinos, comparecieron ante la Notario Público Janet Díaz Salicrup y manifestando estar casados, el 7 de septiembre de 1994, otorgaron la Escritura Núm. Ciento Quince (115) de Segregación, Liberación y Compraventa. Así adquirieron el solar ubicado en la Urbanización Bosque de los Frailes. Posteriormente, ya habiéndose constituido el matrimonio, en este solar construyeron una estructura que se convirtió en su hogar conyugal. La construcción culminó el 27 de mayo de 1998.

El señor Torres Vélez peticionó al Tribunal de Primera Instancia que determinara si el dinero utilizado para la compraventa del solar era privativo a pesar de las partes haber comparecido como cónyuges otorgantes. *A contrario sensu*, la señora Soto Hernández replicó que ellos comparecieron como casados al otorgamiento de la Escritura porque ambos hicieron aportaciones para adquirir el terreno, conformándose así una Comunidad de Bienes en el que cada uno contaba con el cincuenta por ciento (50%) de la participación.

Así las cosas, el 22 de mayo de 2007, se vendió el inmueble por un millón de dólares ($1,000,000.00), cantidad que fue depositada en una cuenta de banco a nombre de ambos cónyuges. Según se desprende de las alegaciones, las

partes acordaron que el dinero solamente podría ser retirado con la anuencia de ambos cónyuges y del Contador Partidor, con excepción de un adelanto de cien mil dólares ($100,000.00) que cada uno recibiría. Sin embargo, se alegó que contrario a lo dispuesto y sin obtener consentimiento, la señora Soto Hernández retiró dinero adicional de la cuenta conjunta. En el juicio, esta reconoció haber actuado indebidamente y justificó haber tomado esta cantidad de dinero para comprarse un apartamento en el complejo Regency Park en Guaynabo, Puerto Rico.[2] Ante estos acontecimientos, el señor Torres Vélez solicitó que se determinara si la señora Soto Hernández le debía restituir este dinero.

Así las cosas, luego de la vista en su fondo, el Tribunal de Primera Instancia concluyó que el señor Torres Vélez compró el Apartamento del Condominio Tropicana con dinero privativo. Al vender este inmueble tenía como propósito efectuar otra compraventa, pero se suscitaron situaciones ajenas a su voluntad que no le permitieron realizar el negocio jurídico. Por el contrario, le otorgó un préstamo a su corporación por la cantidad de dinero obtenida mediante la compraventa.

Una vez le es devuelto el dinero, y conforme reseñado, este adquiere el Apartamento del Condominio Capitol Plaza por la cantidad de trescientos noventa y cuatro mil dólares ($394,000.00). Nótese que de la venta del Condominio

---

[2] *Íd.* en la pág. 282.

Tropicana solo se adquirieron ciento cincuenta y seis mil dólares ($156,000.00). La diferencia fue suplida con una hipoteca constituida por la Sociedad Legal de Gananciales. A pesar de esto, el Tribunal entendió que el inmueble era privativo del señor Torres Vélez. Concluyó además que no existía derecho a reclamar la amortización del principal que la Sociedad Legal de Gananciales hiciera durante el matrimonio, debido a que ambos cónyuges se beneficiaron de ocupar el Apartamento. El tribunal de instancia fundamentó su decisión en la Doctrina de Subrogación o Sustitución.

Por otra parte, dicho foro determinó que el señor Torres Vélez demostró que el dinero utilizado para la compra del solar de la Urbanización Bosque de los Frailes provenía de su caudal privativo, mientras que la señora Soto Hernández no pudo demostrar por preponderancia de la prueba que aportó dinero o esfuerzo para la adquisición de dicho terreno. El foro de instancia entendió que el recurrido presentó prueba de haber retirado de sus cuentas bancarias la cantidad de dinero necesaria para la adquisición del solar. A esta evidencia instada en el juicio en su fondo, se le añade la admisión que fue presentada y luego retirada por la señora Soto Hernández, a través de su representación legal, a los efectos de que el solar había sido adquirido privativamente por el recurrido. Siendo así, el Tribunal de Primera Instancia concluyó que no se le debía reconocer participación a la peticionaria. Resolvió esto a pesar de que al otorgamiento de la

Escritura las partes comparecieron como cónyuges sin estar legalmente casados.

En cuanto al dinero retirado de la cuenta bancaria sin el consentimiento del Contador Partidor ni del recurrido, el tribunal de instancia dictaminó que la señora Soto Hernández debía pagar los intereses dejados de percibir por el retiro de esta cantidad.

Por último, el foro de instancia concluyó que la señora Soto Hernández "fue temeraria en la defensa de su caso".[3] Basó su razonamiento en que retiró la admisión de que el solar de la Urbanización Bosque de los Frailes era privativo, a pesar de constarle que esa era su naturaleza. Además, por haber negado el carácter privativo del Apartamento en Capitol Plaza y retirar dinero sin la anuencia del señor Torres Vélez y el Contador Partidor.

De dicho dictamen, la peticionaria solicitó reconsideración que fue denegada.[4] Inconforme con esta determinación, la señora Soto Hernández recurrió al Tribunal de Apelaciones, el cual confirmó la Sentencia Parcial dictada por el tribunal inferior. En su dictamen, el tribunal apelativo aclaró que de acuerdo al principio de accesión a la inversa, para efectos del Contador Partidor, el terreno privativo de la Urbanización Bosque de los Frailes debía ser valorado al momento de la culminación de

---

[3] *Íd.* en la pág. 283.
[4] *Íd.* en la pág. 312.

la construcción de la estructura que fue edificada con el caudal de la Sociedad Legal de Gananciales.[5]

Insatisfecha con la determinación del Tribunal *a quo*, la peticionaria presentó un recurso de *certiorari* ante nos. En ese recurso nos plantea los siguientes errores:

1. Erró el Tribunal de Apelaciones al confirmar que el terreno en Bosque de los Frailes es de carácter privativo pues está claramente resuelto que en la accesión a la inversa el terreno se convierte en ganancial con el correspondiente crédito al dueño original.
2. Erró el Tribunal de Apelaciones al confirmar que la propiedad ubicada en el Condominio Capitol Plaza es privativa porque hace una incorrecta aplicación del derecho y la doctrina sobre sustitución de bienes privativos por otros en el régimen de sociedad legal de gananciales.
3. Erró Instancia al imponerle a la demandada el pago de intereses por la suma de dinero que está depositada en un banco ganando intereses.
4. Erró el Tribunal de Apelaciones al confirmar el dictamen de temeridad contra la Sra. Soto porque el Tribunal de Primera Instancia abusó de su discreción al dictarla aun cuando existen honestas discrepancias en el derecho aplicable.

Evaluado el recurso acordamos expedir. Luego de examinar detenidamente los autos y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II

La peticionaria solicita que determinemos que el Tribunal de Apelaciones erró al concluir que el Apartamento del Condominio Capitol Plaza es privativo por hacer una

---

[5] *Íd*. en las págs. 394-395, 401.

incorrecta aplicación de la Doctrina de Sustitución o

Subrogación de bienes.

El Art. 1299 del Código Civil de Puerto Rico, dispone

que:

Son bienes propios de cada uno de los cónyuges:

(1) Los que aporte al matrimonio como de su pertenencia.
(2) Los que adquiera durante él, por título lucrativo, sea por donación, legado o herencia.
(3) Los adquiridos por derecho de retracto o por permuta con otros bienes pertenecientes a uno solo de los cónyuges.
(4) Los comprados con dinero exclusivo de la mujer o del marido.[6]

Sobre el equivalente a este artículo en el Código Civil

Español, el Art. 1396, el tratadista Manresa expresa que[7]:

Durante el matrimonio no es lo más natural que los bienes aportados o adquiridos se conserven siempre los mismos. Unos se consumen, otros se cambian o se venden, otros se extinguen y se sustituyen por una indemnización, etc., y todos estos hechos dan lugar a una transformación de los bienes de cada cónyuge, que van en parte y sucesivamente cambiándose o sustituyéndose por otros.

Nuestro Código acepta en absoluto el principio de la subrogación, de modo que, en principio, todo lo que durante el matrimonio adquieren privativamente el marido o la mujer, en sustitución o representación de otros bienes que ya anteriormente les pertenecían, queda subrogado en el lugar de éstos y se entiende que forma parte de su capital privativo. La ley sólo exige la prueba de la verdad de esa sustitución, o que ésta resulte cierta con toda evidencia. En caso

---

[6] 31 L.P.R.A. sec. 3631.
[7] Hacemos referencia al anterior Art. 1396 del Código Español. Luego de la Reforma del Código Civil Español por la aprobación de la Ley 11 de 13 de mayo de 1981 hubo un cambio de enumeración y en la actualidad es el Art. 1346. Orden Núm. 119 de 19 de mayo de 1981, II Aranzadi, Repertorio Cronológico de Legislación 1151 (1981).

de duda, considera los bienes como gananciales. J. M. Manresa y Navarro, <u>Comentarios al Código Civil Español</u>, 6ta ed. rev., Madrid, Ed. Reus, 1969, T.IX, pág. 661.

A tenor con estas expresiones, cuando un cónyuge tiene un bien privativo y lo sustituye por otro, el bien adquirido no pierde su naturaleza por el mero hecho de la sustitución. No obstante, esta sustitución debe ser probada. En su defecto, el bien deberá ser considerado como uno perteneciente al caudal de la Sociedad Legal de Gananciales.

Es importante señalar que el tratadista divide los bienes privativos a los que se refiere nuestro citado Art. 1299 en dos (2) grupos: los de capital propio de cada uno de los cónyuges y los bienes privativos de cada cónyuge por sustitución o subrogación. En el primer grupo incluye los bienes aportados al matrimonio privativamente por cada cónyuge en forma de capital. También, aquellos bienes adquiridos a título lucrativo por cada cónyuge durante el matrimonio, tales como las donaciones, herencias o legados. Manresa y Navarro, <u>op. cit.</u>, págs. 658-662.

Por otra parte, en el segundo grupo -los adquiridos por sustitución o subrogación- incluye aquellos bienes que un cónyuge adquiere por permuta con bienes que le pertenecen exclusivamente, los adquiridos por retracto o los que se compran con dinero exclusivo de uno de los cónyuges. En este último caso, se debe demostrar la procedencia del dinero o se presumirá que el bien pertenece

al caudal de la Sociedad Legal de Gananciales. Manresa y Navarro, op. cit., pág. 662. En el caso de la permuta, el tratadista nos explica que el bien continuará siendo privativo independientemente del valor del bien sustituido.

El Art. 1428 del Código Civil de Puerto Rico, define la permuta como "un contrato por el cual cada uno de los contratantes se obliga a dar una cosa para recibir otra".[8] A base de esta definición y los hechos ante nuestra consideración, no podemos concluir que en el caso de autos hubo una permuta. Cuando el señor Torres Vélez vendió el Apartamento del Condominio Tropicana recibió una cantidad de dinero como contraprestación, no el Apartamento del Condominio Capitol Plaza. Este último no lo adquiere hasta un (1) año después a través de otra compraventa. Es imposible concluir que el Apartamento del Condominio Capitol Plaza fue obtenido a cambio del Apartamento del Condominio Tropicana.

Por otro lado, el Art. 1396 del Código Civil de Puerto Rico, expresa que el retracto se configura "cuando el vendedor se reserv[a] el derecho de recuperar la cosa vendida".[9] De acuerdo a esta definición y al cuadro fáctico que nos ocupa, tampoco podemos concluir que hubo un retracto. De los autos no surge que el señor Torres Vélez se reservara tal derecho.

---

[8] 31 L.P.R.A. sec.3981.
[9] 31 L.P.R.A. sec.3901.

Por último, nos resta evaluar si el inmueble fue adquirido exclusivamente con bienes de uno de los cónyuges. Como hemos reseñado, el Apartamento en cuestión fue adquirido por bienes privativos del señor Torres Vélez y un préstamo realizado por la Sociedad Legal de Gananciales a First Equity Mortgage.

Así las cosas, debemos concluir que en el caso de autos el bien no fue adquirido exclusivamente con bienes privativos del señor Torres Vélez. Por lo tanto, debemos aplicar lo dispuesto anteriormente y presumir que el bien adquirido es ganancial.

El primer inciso del Art. 1301 de nuestro Código Civil, dispone que se reputarán como gananciales aquellos bienes que sean:

> adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos.[10]

Cónsono con lo anterior, el Art. 1307, determina que:

> se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o la mujer.[11]

Nuestra jurisprudencia ha establecido que este articulado "constituye la piedra angular en toda causa litigiosa en que se intente precisar la naturaleza privativa o ganancial de los bienes del matrimonio". *García v. Montero Saldaña*,

---

[10] 31 L.P.R.A. sec. 3641.
[11] 31 L.P.R.A. sec. 3647.

107 D.P.R. 319, 335 (1978) (Citas omitidas). Asimismo, este Tribunal ha reconocido que para establecer la naturaleza privativa o ganancial de un bien se puede tomar en consideración tanto el título de origen como cualquier otra prueba pertinente.[12]

Según consta de la Escritura Núm. Quinientos Uno (501) de Segregación, Liberación y Compraventa mediante la cual los cónyuges adquirieron el Apartamento de Capitol Plaza, se otorgó una hipoteca sobre el inmueble como garantía de un préstamo otorgado por First Equity Mortgage.[13] Sin embargo, el inmueble no fue solamente adquirido a través del dinero obtenido mediante esta hipoteca. El Tribunal de Primera Instancia concluyó que para esta compraventa también se utilizó dinero privativo del señor Torres Vélez.[14] Siendo así, el inmueble en cuestión no fue adquirido exclusivamente con bienes de uno de los cónyuges ni de la Sociedad Legal de Gananciales, sino que el inmueble se adquirió con un caudal mixto.

Sobre el particular el tratadista Manresa, al analizar el Artículo análogo en el Código Civil Español antes de la Reforma de 1981, ha expresado lo siguiente:

> ¿Qué concepto merecían los bienes comprados con dinero que en parte pertenezca al marido y en parte a la mujer, o en parte a la sociedad y en parte a uno de los cónyuges?
> Puesto que la ley atiende, no a la persona en cuyo nombre o a favor del cual se realiza la compra, sino a la procedencia del dinero,

---

[12] *Véase Vda. de Fernández v. Registrador*, 98 D.P.R. 765, 769 (1970).
[13] Véase Apéndice*,* en la pág. 29.
[14] *Íd.* en la pág. 283.

considerando el hecho como una verdadera sustitución o conversión del dinero en otros objetos, debemos deducir que cuando una finca, por ejemplo, se compra con dinero del marido y de la mujer, o de la mujer y de la sociedad, pertenece a aquellos de quienes procede el precio y en la proporción entregada por cada cual. Si pues, marido y mujer compran una casa, entregando el primero de su capital propio 10.000 pesetas y la segunda 5.000, **la casa pertenecerá a los dos cónyuges pro indiviso**, en la proporción de dos terceras partes al marido y una tercera a la mujer. Manresa y Navarro, op.cit., pág. 663 (Énfasis suplido).

De tal envergadura es este análisis que en la Reforma de 1981, el Código Civil Español disipó cualquier duda al respecto y se dispuso que un bien adquirido con caudal mixto corresponde proindiviso a la Sociedad Legal de Gananciales y al cónyuge. Al respecto, el tratadista Puig Brutau señala que:

Una adquisición de bienes puede haber tenido efecto a cambio de precio mixto, en parte ganancial y en parte privativo. Para tal caso el art. 1.354 establece: 'Los bienes adquiridos mediante precio o contraprestación, en parte ganancial y en parte privativo, **corresponderán pro indiviso a la sociedad de gananciales y al cónyuge o cónyuges en proporción al valor de las aportaciones respectivas'**". José Puig Brutau, Fundamentos de derecho civil, 2da ed., Barcelona, Ed. S.A., 1985, T.IV, pág. 140 (Énfasis suplido).

Cónsono con estas expresiones, este Tribunal ha expresado que:

[N]o existe impedimento en que una persona adquiera una parte de una finca como bien privativo y otra parte como ganancial.

Como resultado de este negocio o transacción surge la figura de la comunidad ordinaria que habrá de regirse 'por la normativa de la comunidad de bienes, concurriendo a la misma, de una parte, la pareja colectivamente y, de otra, el esposo o esposos titulares individuales'.

> Universal Funding Corp. v. Registrador, 133
> D.P.R. 549, 554 (1993) (Citas omitidas).[15]

Consecuentemente, cuando un bien tiene un origen mixto se conforma una comunidad pro-indiviso entre aquellos que aportaron a esta adquisición en la proporción de su participación. Tal como señala el tratadista Manresa, cuando aludimos a la expresión de origen mixto, nos estamos refiriendo, en este caso, a que el bien fue adquirido en parte con capital privativo de uno de los cónyuges y por otra parte, con caudal común de la Sociedad Legal de Gananciales.

Por otro lado, dados los planteamientos hechos por las partes, es pertinente elaborar en que luego de los pronunciamientos que hemos citado, el tratadista Puig Brutau se cuestiona si la regla aplicaría de la misma manera en aquellos casos en los que el bien se adquiere a precio aplazado. Concluye que en el caso de la adquisición por precio aplazado la comunidad indivisa surgirá siempre que el primer pago se realice con dinero ganancial y privativo. De esto no ocurrir, aplicaría el Art. 1.356 del Código Civil Español, el cual dispone que el carácter del bien sea determinado por el primer desembolso. De este provenir de dinero privativo, el bien así será considerado.

---

[15] En este caso, la Sociedad Legal de Gananciales adquirió un préstamo sujeto a que la cónyuge vendiera una propiedad privativa por haber sido obtenida antes de contraer matrimonio. Además, la cónyuge aportó dinero privativo que había adquirido a través de una donación. *Íd.* en la págs. 550-551. Ante estos hechos, permitimos la inscripción de la Escritura de Compraventa e Hipoteca porque un inmueble puede pertenecer en comunidad a la Sociedad Legal de Gananciales y a uno de los cónyuges en su carácter privativo.

Mientras que de tener procedencia mixta, se considerará ganancial. *Íd.*

Por lo tanto, bajo esta interpretación, el primer desembolso va a adquirir relevancia para determinar el carácter ganancial o privativo de un bien cuando este es adquirido por precio aplazado. En el caso que nos concierne, las partes adquirieron la propiedad a través de un solo pago a Moral Development, S.E., la parte vendedora. Este pago fue realizado con dinero privativo de uno de los cónyuges y un préstamo garantizado con hipoteca a favor de la Sociedad Legal de Gananciales. Enfatizamos que de la Escritura Núm. Quinientos Uno (501) surge que la parte vendedora recibió la totalidad del precio del inmueble el día en que se realizó el negocio jurídico.[16] Siendo así, podemos concluir que los cónyuges no adquirieron una deuda a precio aplazado con la vendedora del inmueble en cuestión.

El análisis de la Doctrina aplicable nos lleva a concluir que el Tribunal de Apelaciones erró al determinar que hubo una subrogación de un bien privativo del señor Torres Vélez. Asimismo, incidió al determinar que la Sociedad Legal de Gananciales no tenía ningún derecho, a pesar de haber obtenido un préstamo para la adquisición del bien. Según se desprende de la presunción de bienes gananciales de nuestro Código Civil y del razonamiento de los tratadistas, cuando un bien es adquirido con bienes

---

[16] *Íd.* en las págs. 18-19.

mixtos se conforma una comunidad pro indiviso entre la Sociedad Legal de Gananciales y el cónyuge en proporción al valor de las aportaciones respectivas.

Al aplicar esta normativa a la situación de autos, podemos concluir que el Apartamento del Condominio Capitol Plaza, adquirido a través de instrumento público con caudal mixto –parte de un cónyuge y otra parte de la Sociedad Legal de Gananciales-, es un bien de naturaleza mixta. El señor Torres Vélez y la señora Soto Hernández poseen en común pro indiviso dicho Apartamento. Sin embargo, al momento de liquidar la Sociedad Legal de Gananciales, el señor Torres Vélez tiene un derecho al valor del bien en proporción a la participación que ostenta por el dinero privativo aportado para la adquisición de este bien más la proporción que le corresponde como miembro de la Sociedad Legal de Gananciales.

Antes de continuar discutiendo los asuntos ante nuestra consideración, es pertinente destacar que contrario a lo dispuesto por el Tribunal de Primera Instancia y alegado por la parte recurrida, lo establecido en *Vélez Cordero v. Medina*, 99 D.P.R. 113 (1970), y en *Lanausse v. Silva, etc.,* 84 D.P.R. 546 (1962), no es pertinente a esta controversia. En este último, el Tribunal tuvo que resolver si era necesario que el esposo compareciera cuando la cónyuge adquiere un bien inmueble con bienes privativos y el remanente garantizado con hipoteca sobre el bien adquirido sin comprometer a la Sociedad Legal de

Gananciales. Además de contestar en la negativa, este Tribunal expresó que el mero hecho de que la hipoteca fuese satisfecha con dinero ganancial no cambiaba la naturaleza privativa del bien adquirido por la cónyuge. *Lanausse v. Silva*, supra, pág. 550.

Ciertamente, estos hechos son distinguibles de los que tenemos ante nuestra consideración. En *Lanausse v. Silva,* la cónyuge adquirió el bien y asumió el pago de la hipoteca en su carácter privado, su cónyuge no estaba asumiendo ninguna responsabilidad. Es bajo este contexto que el Tribunal dispone que el bien es privativo y solo en la eventualidad de que la Sociedad Legal de Gananciales o el otro cónyuge tuviesen que responder subsidiariamente por esta deuda, serían acreedores de un crédito al momento de la liquidación de la comunidad post-ganancial. *Íd.*

Por otro lado, en *Vélez Cordero v. Medina*, supra, este Tribunal atendió una controversia donde uno de los cónyuges utilizó caudal ganancial para perfeccionar la permuta de un bien privativo. Bajo estas circunstancias, este Tribunal concluyó que independientemente de lo aportado por la Sociedad Legal de Gananciales, el bien adquirido por permuta de otro bien privativo no perdía su carácter privativo. *Íd.* en las págs. 117.

En síntesis, erraron los tribunales inferiores al aplicar las doctrinas que reconociéramos en esta jurisprudencia a la situación de autos. En primer lugar,

el inmueble en cuestión fue adquirido en conjunto por la Sociedad Legal de Gananciales y el señor Torres Vélez en su carácter privativo. Esto es contrario a los hechos considerados en *Lanausse v. Silva*, donde un cónyuge adquirió un inmueble sin involucrar el caudal común o privativo del otro cónyuge. La doctrina de *Vélez Cordero v. Medina* es igualmente inaplicable, porque como ya hemos visto, en el caso de autos no hubo una permuta.

III

Se nos solicita que aclaremos la aplicación de la Doctrina de Accesión a la Inversa por la edificación conyugal que se hiciera sobre un bien privativo que el recurrido adquirió mientras vivía en concubinato con la peticionaria.

El concubinato *more uxorio* surge cuando un hombre y una mujer con aptitud para casarse deciden vivir pública y notoriamente como un matrimonio, pero sin cumplir con las formalidades exigidas para este último. Ahora bien, bajo esta unión no se genera una Sociedad Legal de Gananciales. Por el contrario, si se ha constituido una Comunidad de Bienes, el concubino que así lo reclame deberá presentar prueba al respecto. *Caraballo Ramírez v. Acosta*, 104 D.P.R. 474, 481 (1975). Así, luego de probar la existencia de la comunidad y en aras de evitar el enriquecimiento injusto, el concubino deberá presentar prueba sobre su aportación de bienes, valores o servicios. *Íd.*

En el caso de autos, según hemos expuesto, al momento de adquirir el solar de la Urbanización Bosque de los Frailes, el señor Torres Vélez y la señora Soto Hernández no estaban legalmente casados, sino que eran concubinos. Por lo tanto, para poder concluir que poseen este terreno en calidad de comuneros, las partes deben demostrar a satisfacción del tribunal cuál fue su aportación para la conformación de dicha comunidad.

El Tribunal de Primera Instancia determinó que el señor Torres Vélez presentó las libretas bancarias que evidenciaban el retiro de la cantidad de dinero necesario para la compra del solar en cuestión. Por su parte, la señora Soto Hernández no evidenció haber aportado bienes o servicios para la adquisición del mismo.[17] En vista de que estas determinaciones de hecho no han sido controvertidas, le debemos otorgar deferencia al tribunal inferior.

Reiteradamente hemos concluido que:

En ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad que efectúe el Tribunal de Primera Instancia. *Ramírez Ferrer v. Conagra Foods PR*, 175 D.P.R. 799, 811 (2009). Véase, también *Dávila Nieves v. Meléndez Marín*, 187 D.P.R. 750, 771-772 (2013).

Siendo así, y no habiéndose demostrado que el tribunal inferior haya errado en su apreciación de los hechos, confirmamos la determinación a los efectos de que el solar

---

[17] *Íd*. en las págs. 280-281.

de la Urbanización Bosque de los Frailes es privativo del señor Torres Vélez.

Ahora bien, cuando sobre un solar privativo se construye una edificación ganancial opera la Figura de Accesión a la Inversa o Antiaccesión. Esta desplaza el principio de *superficie solo cedit* y lo edificado adquiere primacía sobre el terreno. A tenor con esta normativa, la Sociedad Legal de Gananciales se convierte en propietaria del terreno que en sus orígenes era privativo de uno de los cónyuges. *Calvo Mangas v. Aragonés Jiménez,* 115 D.P.R. 219, 221-222 (1984). Así, tanto el terreno como la edificación son considerados bienes gananciales y el cónyuge propietario del terreno solamente ostentará un crédito al momento de liquidar la Sociedad Legal de Gananciales. El mismo será calculado a base del valor del terreno al momento en que culminó la construcción de la edificación. *Íd.*

En el caso de autos, luego de que las partes contrajeran matrimonio bajo el régimen económico de la Sociedad Legal de Gananciales, edificaron su hogar conyugal sobre el terreno privativo del señor Torres Vélez. Por consiguiente, el terreno se convirtió en ganancial mediante la accesión a la inversa. Según expuesto, al momento de liquidarse la Sociedad Legal de Gananciales, el señor Torres Vélez deberá ser acreditado con el valor del terreno al momento en que culminó la construcción de la edificación ganancial.

IV

La parte peticionaria reclama que el Tribunal de Primera Instancia erró al imponerle intereses por haber retirado dinero de una cuenta bancaria sin el consentimiento de su cónyuge ni del Contador Partidor.

Cuando un matrimonio regido por la Sociedad Legal de Gananciales es declarado roto y disuelto, esta se extingue y se crea una Comunidad de Bienes. *Montalván v. Rodríguez,* 161 D.P.R. 411, 420-421 (2004). Se genera una presunción controvertible de que cada cónyuge tiene un cincuenta por ciento (50%) de participación. La comunidad está compuesta por todos los bienes gananciales y cada cónyuge tiene derecho a administrarla y a solicitar su división. *Íd.*

El Art. 328 del Código Civil, dispone que:

> Cada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme su destino y de manera que no perjudique el interés de la comunidad, ni impida a los demás copartícipes utilizarlas según su derecho.[18]

A base de esto, en *Montalván v. Rodríguez,* supra, determinamos que el señor Rodríguez debía otorgarle un crédito a la señora Montalván por el dinero que utilizó para continuar desarrollando su participación en el negocio en vez de distribuir las ganancias entre los co-dueños. El señor Rodríguez se había mantenido administrando los negocios gananciales durante la comunidad post-ganancial. Con esta determinación, el Tribunal concluyó que:

---

[18] 31 L.P.R.A. sec. 1273.

"se hace justicia a aquel comunero que tolera que su capital se utilice para el enriquecimiento exclusivo del otro comunero, y no se premia a quien teniendo el control absoluto de la comunidad de bienes, no opta por dividirla". *Íd.* en la pág. 438.

En el caso que nos ocupa, según hemos reseñado, las partes acordaron que el dinero depositado en la cuenta bancaria solamente sería retirado si tanto ellos como el Contador Partidor así lo autorizaban. Sin embargo, la señora Soto Hernández retiró cierta cantidad de dinero sin el consentimiento de las demás partes para comprarse un apartamento.

No albergamos duda de que el dinero fue retirado para el disfrute exclusivo de la señora Soto Hernández, antes de que el mismo fuese adjudicado por el Contador Partidor a alguno de los cónyuges. Siendo así y de acuerdo a la Doctrina que hemos discutido, no podemos permitir que, contrario a lo acordado, un cónyuge se beneficie exclusivamente de los bienes de la comunidad y con estas acciones perjudique los intereses del otro comunero. El señor Torres Vélez se perjudicó en tanto no obtuvo las ganancias que se hubiesen generado si el dinero permanecía depositado en la cuenta bancaria, mientras que la señora Soto se benefició de tal acción.

Concluimos que el Tribunal de Apelaciones no erró al confirmar al Tribunal de Primera Instancia en ordenar que la señora Soto Hernández pague los intereses dejados de devengar por la cantidad de dinero que fue retirada de la

cuenta bancaria sin el consentimiento del otro co-dueño, el señor Torres Vélez. El Tribunal de Primera Instancia debe determinar cuánto dinero en intereses dejó de devengar la partida que de la cuantía depositada en la cuenta bancaria le correspondía al señor Torres Vélez, y adjudicarle un crédito por esta cantidad al momento de liquidar la comunidad post-ganancial.

V

"Es norma reiterada que la imposición de honorarios de abogado sólo procede cuando una parte ha actuado con temeridad o frivolidad". *Santiago v. Sup. Grande*, 166 D.P.R. 796, 820 (2006). Al respecto, este Tribunal ha expresado lo siguiente:

> es penalizar. . . al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *Íd.* (Citas omitidas).

La determinación de temeridad o frivolidad está sujeta a la sana discreción del Tribunal de Primera Instancia. Sin embargo, este Tribunal ha resuelto que:

> no existe temeridad cuando lo que se plantea ante el tribunal de instancia son planteamientos complejos y novedosos que no han sido resueltos en nuestra jurisdicción. Tampoco existe temeridad en aquellos casos en que el litigante actúa de acuerdo a la apreciación errónea de una cuestión de derecho y no hay precedentes establecidos sobre la cuestión, o cuando existe alguna desavenencia honesta en cuanto a quién favorece el derecho aplicable a los hechos del caso. *Íd*. (Énfasis omitido) (Citas omitidas).

En el caso ante nuestra consideración existían desavenencias honestas en la aplicación del derecho. Hemos determinado que los tribunales inferiores erraron al aplicar la Doctrina de Subrogación o Sustitución a la compra del Apartamento de Capitol Plaza. También era necesario aclarar que la propiedad edificada en el terreno de la Urbanización Bosque de los Frailes se convirtió en ganancial a través de la Figura de Accesión a la Inversa.

Consecuentemente, no podemos concluir que la peticionaria ha sido temeraria o frívola en la defensa de su caso. *A contrario sensu*, hemos observado una clara desavenencia en cuanto a la aplicación del derecho a los hechos del caso. El Tribunal de Apelaciones erró al concluir que el Tribunal de Primera Instancia no abusó de su discreción al determinar que las actuaciones de la parte peticionaria fueron temerarias.

VI

Por los fundamentos expuestos anteriormente, revocamos al Tribunal de Apelaciones al confirmar aquella parte de la Sentencia del Tribunal de Primera Instancia en la que se concluyó que el apartamento del Condominio Capitol Plaza es privativo y que la Sociedad Legal de Gananciales no tiene ningún derecho sobre el mismo. También revocamos en cuanto a la imposición de temeridad a la parte peticionaria.

Por último, ordenamos que el Tribunal de Primera Instancia determine la cantidad de intereses que dejó de devengar la partida que de la cuantía depositada en la

cuenta bancaria le correspondía al señor Torres Vélez, y le adjudique un crédito al momento de liquidar la comunidad post-ganancial.

De conformidad con lo anterior, se revoca parcialmente la Sentencia dictada por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.


                                        Mildred G. Pabón Charneco
                                            Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


José A. Torres Vélez                                           *Certiorari*

    Recurrido

      v.                                          CC-2012-0951

Blanca I. Soto Hernández

    Peticionaria


SENTENCIA


En San Juan, Puerto Rico, a 11 de diciembre de 2013.

Por los fundamentos expuestos anteriormente, revocamos al Tribunal de Apelaciones al confirmar aquella parte de la Sentencia del Tribunal de Primera Instancia en la que se concluyó que el apartamento del Condominio Capitol Plaza es privativo y que la Sociedad Legal de Gananciales no tiene ningún derecho sobre el mismo. También revocamos en cuanto a la imposición de temeridad a la parte peticionaria.

Por último, ordenamos que el Tribunal de Primera Instancia determine la cantidad de intereses que dejó de devengar la partida que de la cuantía depositada en la cuenta bancaria le correspondía al señor Torres Vélez, y le adjudique un crédito al momento de liquidar la comunidad post-ganancial.

De conformidad con lo anterior, se revoca parcialmente la Sentencia dictada por el Tribunal de Apelaciones.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren sin opinión escrita.


                         Aida Ileana Oquendo Graulau
                         Secretaria del Tribunal Supremo